Precision Scientific Company, Appellee, v. International Union of Mine, Mill and Smelter Workers et al., Appellants.

Gen. No. 46,291.

Opinion filed May 19, 1954. Rehearing denied July 2, 1954. Released for publication July 2, 1954.

MEYERS & ROTHSTEIN, of Chicago, for appellants.

SEARS & STREIT, of Chicago, for appellee; BARNABAS F. SEARS, and DAVID H. ARMSTRONG, both of Chicago, of counsel.

MR. PRESIDING JUSTICE FEINBERG delivered the opinion of the court.

This interlocutory appeal by defendants brings up for review an order for a temporary injunction in a labor dispute, accompanied by a strike called by defendants at plaintiff's plant. The temporary injunction was issued upon the sworn complaint; defendants' written motion to strike the complaint; plaintiff's motion for temporary injunction, and defendants' affidavit in opposition to the motion. No answer was filed to the complaint. A reference was had to a master to hear and report upon plaintiff's motion for temporary injunction. No evidence was heard by the master. Upon the face of the pleadings he recommended that plaintiff's complaint be dismissed for want of equity. Plaintiff's exceptions to the master's report were sustained, and the order for the temporary injunction was entered.

The injunction order in substance commands the defendants to cease the strike in progress and to desist and refrain from inducing or permitting any further strike or work stoppage. It also restrains the use of force, violence or intimidation of any character, and the massing, congregating or collecting in crowds, loitering upon or obstructing the sidewalks, driveways, streets, alleys and approaches to plaintiff's plant.

The complaint in substance alleges that the defendants were not labor organizations within the meaning

of the Taft-Hartley Act and the National Labor Relations Act; that the defendants were dominated by Communist leaders, who are members of the Communist party, which had for its aim and purpose the overthrow of government by force or other illegal means; that a part of the plan to accomplish such purpose was to call illegal strikes, such as the instant strike; that the defendants, previous to the grievances herein complained of, were affiliated with the C. I. O. International Union; that because of the domination of the defendant unions by Communist leaders, the defendants and their leaders were expelled from the C. I. O. organization; and that defendants are not recognized either by the C. I. O. organization or the American Federation of Labor as labor organizations.

The complaint further alleges that on November 18, 1952, plaintiff received a notice from the Regional Director of the National Labor Relations Board that the International Brotherhood of Electrical Workers, Local 1031, A. F. L., filed a petition for certification as collective bargaining agent of the employees of plaintiff, said Local claiming to represent a majority of the production employees of the plaintiff; that the defendants were notified of the petition of Local 1031; that on December 10, 1952, the petition for certification of Local 1031 came on for hearing before a hearing officer of the National Labor Relations Board pursuant to provisions of section 9 of the Labor-Management Relations Act of 1947, as amended; that thereupon in said proceedings, defendants made a motion to intervene on the basis of a prior collective bargaining agreement with the plaintiff; that said motion was opposed by Local 1031 and *by plaintiff on the ground that the intervenor (defendant unions) is a Communist-dominated organization and not in compliance with the affidavit provisions of section 9(h) of the Labor-Management Relations Act of 1947, as amended;* that

533

the hearing officer refused to permit plaintiff or Local 1031 to present evidence upon the question of the Communist domination of the intervenor or its compliance with said section 9(h); and that briefs were filed by plaintiff with the National Labor Relations Board in support of its opposition to the motion to intervene.

The complaint further alleges that on February 5, 1953, the National Labor Relations Board directed an election to be held between Local 1031 and the defendant unions as to who was to be the collective bargaining representative of the employees of plaintiff, and held that plaintiff had no right to litigate the questions presented by it; that the provisions of the Labor-Management Relations Act of 1947, as amended, and other applicable federal laws, do not permit an appeal from such an order directing an election; that thereafter an election was held pursuant to the direction of the Board; that in said election defendants received a majority of the ballots cast; and that plaintiff filed objections to the election, which were overruled by the Regional Director.

The complaint further alleges that on April 10, 1953, the National Labor Relations Board certified the defendant International Union of Mine, Mill and Smelter Workers, Local 758, as the designated and selected collective bargaining representative of the plant and warehouse employees of the plaintiff; and that the only method provided by federal law for a review of the propriety of said certification of defendants as the collective bargaining agent would be under section 10 of the Labor-Management Relations Act of 1947, as amended, when a petition is filed pursuant to said section alleging some unfair labor practice, resulting from a refusal to obey and recognize the certification so had and the refusal to bargain with the bargaining agent so certified.

It further alleges that on April 17, 1953, *plaintiff, in order to obtain a review of the question of certification, refused to recognize defendant Local Union as the collective bargaining representative of its employees or to bargain with it;* that thereupon the defendant Local Union filed a complaint with the Regional Director, charging plaintiff had committed an unfair labor practice by refusing to bargain with it; that plaintiff filed an answer to the complaint with the National Labor Relations Board, in which it denied that the defendant Local Union was a labor organization; that said defendant had not complied with section 9(h) of the Labor-Management Relations Act of 1947, as amended, a copy of which answer is attached to the instant complaint and made an exhibit; that said complaint and answer came on for hearing before the National Labor Relations Board on August 6, 1953; that evidence was introduced upon said hearing; and *that said hearing has not been concluded and is presently pending before said Board.*

It is also alleged that immediately after the certification of defendants as the bargaining agent, the defendants entered into an illegal conspiracy to disrupt, harm and destroy the business, good will and property of the plaintiff; that in furtherance of said conspiracy the defendants forced, compelled and directed the employees of plaintiff to leave the plant of the plaintiff, ordered a work stoppage of all production and maintenance, established a picket line and denied all trucks the right of ingress and egress to and from the property of plaintiff. Finally, the complaint alleges certain specific instances of violence and intimidation, all in pursuance of said conspiracy.

Defendants' motion to strike the complaint, and the sworn affidavit in support of the opposition to the motion for temporary injunction, in substance alleged all of the proceedings had before the National Labor

535

Relations Board, the certification of defendants as the bargaining agent, and that all. of the matters complained of against defendants in plaintiff's complaint were identical with the charges made before the National Labor Relations Board by plaintiff as to the character of the defendant unions and their failure to comply with the National Labor Relations Act to entitle the defendants to certification; that notwithstanding the charges so made before the National Labor Relations Board, the Board, after a hearing, certified the defendant Local as the bargaining agent; and that the precise charges made by plaintiff in the instant complaint are now pending disposition before the National Labor Relations Board, and therefore the court had no jurisdiction. Plaintiff, admittedly, is engaged in interstate commerce business.

Briefly stated, plaintiff's position is that invoking the jurisdiction of the court and the issuing of the temporary injunction is not an interference with the federal agencies governing labor disputes; that the injunction merely protects plaintiff's business and property against an illegal strike called by defendants and violence used by them to carry out their alleged conspiracy, pending the final disposition of the hearing before the National Labor Relations Board; that the sovereignty of the State to protect its citizens and their property is not surrendered to the federal agency under the Taft-Hartley Act or the National Labor Relations Act; and that such sovereign authority of the State may be exercised through the courts by way of injunction, when necessary.

Section 9 of the National Labor Relations Act of 1947, as amended, empowers the National Labor Relations Board to investigate petitions for certification by any organized labor group desiring to be certified as the bargaining. representative of the employees, provided such group and its officers shall file with the

536

Secretary of Labor the non-Communist affidavits therein provided and the data called for by that section. That section provides for notice and hearing. In the instant case such a hearing was had, an election was ordered and the certification was made by the Board, following such election, that the defendant Local was the bargaining agent for the employees of plaintiff.

It is true there is no provision for appeal or review of the findings of the Board and the issuance of its certification.

In *American Federation of Labor v. National Labor Relations Board,* 308 U. S. 401, the Supreme Court pointed out that Congress, in passing the National Labor Relations Act, purposely omitted provision for review of the Board's certification of a bargaining agent under section 9, although the right of review was originally in the Wagner Act. It reviewed the history of the congressional enactments and the debates in Congress reflecting upon the intention of Congress in omitting a review under section 9. The court stated (p. 411):

". . . It seems to be thought that this failure to provide for a court review is productive of peculiar hardships, which were perhaps not foreseen in cases where the interests of rival unions are affected. But these are arguments to be addressed to Congress and not the courts. The argument too that Congress has infringed due process by withholding from federal appellate courts a jurisdiction which they never possessed is similarly without force."

However, section 10 of the Act provides for the filing of charges with the Board of unfair labor practice resulting from a refusal of the employer to bargain with the certified bargaining agent. It is then that plaintiff in the instant case is given the opportunity to answer the charges of unfair labor practice and in

the hearing of such charges may question the propriety of the certification in question and prove, if it can, the matters complained of in the instant complaint. The hearing under this section, as already indicated, is presently pending before the Labor Board. From any adverse ruling plaintiff could then appeal to the United States Court of Appeals, as provided in said section.

The asserted illegality of the strike in question rests upon the premise that defendants are not labor organizations entitled to recognition either by federal or state jurisdictions, because they are entirely dominated by leaders who are Communists, belonging to the Communist party, who called the strike in question to further their aim and purpose of overthrowing by force the orderly processes of government, and which directly affects and threatens to destroy the business and property of plaintiff.

The Supreme Court in *Ellingsen v. Milk Wagon Drivers' Union,* 377 Ill. 76, held the right of the employees to peaceably strike, singly or collectively, is not denied to them by the laws of this State but is recognized and protected by our anti-injunction statute in labor disputes (ch. 48, § 2a, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 106.21]), which provides among other things:

"No restraining order or injunction shall be granted by any court of this State, or by a judge or the judges thereof in any case involving or growing out of a dispute concerning terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert, from terminating any relation of employment or from ceasing to perform any work or labor, or from peaceably and without threats or intimidation recommending, advising, or persuading others so to do; or from peaceably and without threats or intimidation being upon any public street, or

538

thoroughfare or highway for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to work or to abstain from working, or to employ or to peaceably and without threats or intimidation cease to employ any party to a labor dispute, or to recommend, advise, or persuade others so to do."

The constitutionality of this statute was sustained in *Fenske Bros. v. Upholsterers' International Union,* 358 Ill. 239, 193 N. E. 112. The sovereign power of the State to police such strikes is unquestioned by the defendants.

The paramount question upon this appeal, which must govern our ultimate conclusion, is whether, upon this record, the federal agency, which has assumed jurisdiction and has conducted a hearing upon the subject matter of the instant complaint, has jurisdiction to the exclusion of any state court exercising jurisdiction through the medium of injunction proceedings. That Congress intended that the federal agency should have exclusive jurisdiction we think is apparent in section 160, Title 29, United States Code, Supplement IV, which provides:

"The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. *This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry* (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor

disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith." (Italics ours.)

Nothing appears in the record before us to indicate that the Board ceded to any agency of the State its jurisdiction, as provided in that section.

The exclusive jurisdiction of the federal agency is further illustrated in the case of *LaCrosse Telephone Corp. v. Wisconsin Employment Relations Board,* 336 U. S. 18.

The court there held that a Wisconsin statute, which provided for a certification of a union as a collective bargaining representative of the employees, insofar as it affected interstate commerce, was in conflict with the National Labor Relations Act and invaded the exclusive jurisdiction of the federal agency in the matter of the certification of the labor organization as the bargaining representative. It also pointed out that section 160, already referred to, provides authority to the federal agency to cede its jurisdiction to a state agency, and that there was no showing in that case of any cession of jurisdiction to the Wisconsin board.

A recent case decided by our Supreme Court, illustrating the sensitive area of state and federal relations, is *Hayes Freight Lines, Inc. v. Castle,* 2 Ill.2d 58. In that case plaintiff sought a declaratory judgment and an injunction to restrain the public authorities from enforcing section 132.02 of the Uniform Act Regulating Traffic on Highways (ch. 95½, par. 229b, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 85.261(2)]). This section provides for the suspension of the certificate of necessity and convenience issued to the plaintiff in that case, where habitual violation of the statute of overloading its trucks on the highways of the State

540

is shown. A like certificate of necessity and convenience was issued by the Interstate Commerce Commission under the federal statutes. It was there contended that the section of the state statute providing for the suspension of the certificate was an undue interference with interstate commerce and therefore unconstitutional. The court held that the section of the state statute in question was unconstitutional because it applied to interstate as well as intrastate commerce. The *Hayes* case illustrates that the sovereign power of the State to protect its own highways exists, yet where its prescribed procedure results in interference with interstate commerce, it may not enforce its sovereign power.

The Supreme Court in the *Hayes* case cited *Hill v. Florida*, 325 U. S. 538, which we think directly bears upon the question of jurisdiction. In the *Hill* case, a business agent, who failed to secure a license required by the state law, was enjoined from acting as business agent. The Supreme Court of the United States there held that his right to act in the capacity was conferred by the National Labor Relations Act, and that the right so granted could not be obstructed by injunction or by penalty for acting without a license. The court said (p. 543):

"It is the sanction here imposed, and not the duty to report, which brings about a situation inconsistent with the federally protected process of collective bargaining."

Plaintiff also contends that whatever non-Communist affidavits were filed by the defendants and their officers under section 9 was not a compliance with that section because the affidavits were utterly false, since the officers making the affidavits were members of the Communist party, as already indicated, and that there being no real compliance with that section, the Board

541

had no right to certify defendant Local as the bargaining agent.

In *United Electrical, Radio & Machine Workers v. Herzog*, 110 Fed. Supp. 220, the court held that the Board has no authority to inquire as to the truth or the falsity of the affidavits, and that Congress, by making the penal provisions of the Criminal Code applicable to the filing of such false affidavits, delegated the burden upon the Department of Justice to prosecute alleged perjury.

*Farmer v. United Electrical, Radio & Machine Workers*, 211 F.2d 36, 39 (C. C. A., District of Columbia), sustained the reasoning of the court in *United Electrical, Radio & Machine Workers v. Herzog, supra,* and said:

"We hold, for the reasons expressed in the trial court's memorandum, that the Board has no authority under the Act to deprive the Unions of their compliance status under § 9 (h). The scheme of § 9 (h) is clear. It imposes a criminal penalty for filing a false affidavit under § 9 (h), in order to deter Communist officers from filing at all; then the failure of such an officer to file is made the touchstone for barring his union from crucial benefits under the Act, as an incentive to the membership to rid itself of such leadership. There is nothing in the Act or in its legislative history or in good sense to indicate that Congress meant to go further and impose the drastic penalty of excluding the union from the Act's benefits *because its officer had deceived the union as well as the Board by filing a false affidavit.* We need not decide whether the union would be barred from the Act's benefits if its membership was aware of the alleged falsity of the affidavit. The Board makes no claim of such awareness here." (Italics ours.)

■ ■ It follows from what we have said, that part of the injunction order which commands the cessation

of the strike in question, and that defendants direct the striking employees to return to work, and commands that defendants desist and refrain from advising or encouraging further strike or work stoppage, is reversed. As to that part of the injunction which restrains intimidation, force and violence, the same is affirmed. We consider as too indefinite and too broad paragraphs (d) and (f) of said order, which refer to massing and congregating, or collecting in crowds, or obstructing the sidewalks and driveways, or picketing and patrolling the same, as provided in said paragraphs. Upon remandment the court should determine, upon a further showing, the reasonable number of pickets defendants are entitled to maintain during the strike. Bearing upon the question of what would be a reasonable number is *American Steel Foundries v. Tri-City Council*, 257 U. S. 184, 206.

*Affirmed in part and reversed in part and remanded for further proceedings in accordance with the views herein expressed.*

KILEY and LEWE, JJ., concur.