EADS COAL COMPANY *et al.*, Plaintiffs-Appellees, *v.* UNITED MINE WORKERS OF AMERICA, DISTRICT No. 12 *et al.*, Defendants-Appellants.

(No. 70-194; )

Fifth District—March 19, 1971.

Heyl, Royster, Voelker & Allen, of Peoria, (William Voelker, Jr., Duncan B. Cooper III, and James B. Lewis, of counsel,) for appellants.

Horsley, Kimble, Lott and Surman, of Springfield, (G. W. Horsley, of counsel,) and Craig & Craig, of Mt. Vernon, (Howard W. Campbell, of counsel,) for appellees.

Mr. JUSTICE CHAMBERLAIN delivered the opinion of the court:

The defendants appeal from an order whereby the trial court granted a temporary injunction sought by the Eads Coal Company, hereinafter referred to as Eads, and the Progressive Mine Workers of America, District No. 1, hereinafter referred to as Progressive, and on behalf of employees of the Belle Rive Mine located in Mt. Vernon, Illinois.

The temporary injunction was granted against certain named individual defendants as well as the United Mine Workers, District No. 12, hereinafter referred to as United. The injunction restrained the defendants from mass picketing, threats to employees, as acts of violence and intimidation of said employees.

Eads had recognized Progressive as the exclusive bargaining agent for the mine employees. United wanted to organize the employees at the Belle Rive Mine and was advised by Eads that it had a valid labor contract with Progressive. Thereafter, United attempted to recruit the employees into joining their union. From the alleged procedures of recruitment this lawsuit resulted. This occurred during the week of October 12, 1970.

A temporary injunction was granted *ex parte* by the Circuit Court of Jefferson County on October 16, 1970 and was extended an additional ten days on October 26, 1970. A motion to dissolve the injunction was denied on the same date. Thereafter, the temporary injunction, which is the subject of this appeal, was granted on November 4, 1970 after the court had several days of extensive testimony.

■■ At the outset we should comment that Chapter 48, Section 2A, Illinois Revised Statutes, 1969, popularly known as the Illinois Anti-Injunction Act, is not applicable to this cause. That statute does not apply in situations where violence, threats and intimidation are involved. *General Electric Company v. Local 997 U.A.W.* (1955), 8 Ill.App.2d 154.

There were a number of witnesses called by each side. Some of the plaintiffs' witnesses testified that they had received threatening phone calls or other verbal threats not to go to work. The threats involved physical harm or damage to their property. Others testified they were hollered at and threatened as they entered the mine entrance or they were crowded or jostled as they entered. Considerable profanity and abusive language was apparently used. Others indicated they had seen a car window smashed out and had heard gunshots near the mine.

The president of the local school board expressed concern to mine officials for the safety of the school children as the school bus had to pass the mine enroute to the school.

Beginning a couple of days after the pickets were present at the mine, the mine employees would either arrive at the mine prior to the pickets or would meet and form a caravan or convoy so that they could all proceed to the mine together. They indicated this was done for mutual protection.

Additional witnesses testified that there were a large number of pickets at various entrances which made it difficult to enter the mine. The evidence as to the number of pickets varied from thirty to one hundred with claims by named defendants that the number of pickets would increase to five hundred. The mine employed around fifty to sixty employees.

Further evidence indicated that many employees stayed away from work as a result of threats. Throughout the relevant period of time officials of United who were also named defendants were present at the site or were involved in instructing the pickets. Most of the witnesses called by the defendants testified they were not involved in any of the alleged acts, but did not contradict the testimony of any of the plaintiffs' witnesses. There was little direct contradictory testimony in the trial.

■■ From a review of the evidence the findings of the trial court are supported by the evidence and are not against the manifest weight of evidence.

■■ The question of which of the two unions has the right to represent the employees at Belle Rive Mine is not before this court. The state courts have jurisdiction to issue an injunction, if supported by the evidence, even though there is ultimate jurisdiction over the main issue before the National Labor Relations Board. (*Precision Scientific Co. v. International Union of Mine, Mill* and *Smelter Workers* (1954), 2 Ill.App.2d 531 and

*Fansteel Metallurgical Corporation v. Lodge 66 of Amalgamated Ass'n. of Iron, Steel and Tin Workers of North America* (1938), 295 Ill.App.2d 323.) The issue before this court is whether or not the trial court properly issued a temporary injunction to terminate the alleged activities of the defendants.

In *Brown v. Zimmerman,* (1960), 18 Ill.2d 94 the court at Page 102 stated:

"Finally, aside from the foregoing disposition of the legal points raised, the determination of this case depends largely upon the facts to be found in the record. In such situations the findings and judgment of the trial court, in chancery and nonjury cases, will not be disturbed by the reviewing court, if there is any evidence in the record to support such findings."

Also, in *Reese v. Layman,* (1954), 2 Ill.2d 614 the court stated at Page 624:

" 'The circuit court, as the trier of fact in this cause, heard the evidence and saw the witnesses, and its findings for plaintiff should not be disturbed by a reviewing court unless manifestly against the weight of the evidence."

The court in *Brown v. vimmerman, supra,* at Page 102 further stated: "Where the trial court has seen and heard the witnesses and the testimony is contradictory, this court will not substitute its judgment as to the trial court, and will not disturb the findings unless they are manifestly against the weight of the evidence."

The defendants also contend that the temporary injunction issued by the trial court was, in effect, a permanent injunction inasmuch as it granted relief to the extent that only a permanent injuction could provide. In so doing the case was disposed of on its merits under the guise of granting a temporary injunction.

Defendants cite 21 Illinois Law and Practise, Injunctions, Sec. 12, at Page 528, which states:

"A temporary injunction should not be granted in order to alter or destroy the *status quo,* or where it has the effect of granting to the plaintiffs all the relief which could be obtained by a final decree."

Defendants also cite *People v. Standidge* (1928), 333 Ill. 361; *Klein's Restaurant Corp. v. McLain* (1937) 293 Ill.App. 54, and *Cassidy v. Triebel* (1948), 337 Illl.App. 117. In each of these cases, as well as others cited by the defendants, the trial court granted affirmative relief and in effect terminated the proceedings as far as the relief sought was involved. In effect there was no *status quo* preserved in any of the cited cases.

In *Consumer's Digest, Inc. v. Consumer's Magazine* (1968), 92 Ill.App.2d 54, the court stated at Page 59:

"The Defendants argue that the awarding of a temporary injunction determined controverted rights and granted plaintiff all the relief which could be obtainable in a final decree. That argument is not tenable, since it is well acknowledged that the purpose of a temporary injunction is to protect the plaintiff by maintaining the parties in the same position they were in prior to the time when this dispute arose. It has been repeatedly stated that the granting or refusing of a temporary injuction is a matter resting in the sound discretion of the court."

This is precisely what the trial court did in this cause. The petition for a temporary injunction sought to terminate threats, intimidation and violence. The scope of a temporary injunction will depend on the nature of the case, the evidence presented in the hearing and the relief sought. While the evidence presented would also support a permanent injunction, we do not feel the trial court abused its discretion in granting the temporary injunction to the extent that it did. *Gifford v. Rich* (1966), 58 Ill.App.2d 405.

When the trial court issued the temporary injunction the defendants were limited to two pickets at each of the three entrances to the mine. No issue was raised either in the trial court or this court as to the reasonableness or the propriety of limiting the number of pickets. In fact, counsel for the defendants during oral argument admitted that at no time subsequent to the granting of the injunction did they ever place any pickets at the mine. Consequently, the reasonableness or unreasonableness of the limitation of the pickets, by way of denial of freedom of speech, is not an issue before this court.

For the reasons stated herein, the judgment of the trial court is affirmed.

Judgment affirmed.

EBERSPACHER and G. MORAN, JJ., concur.