STANTON BROOKS, Plaintiff-Appellee, *v.* LA SALLE NATIONAL BANK *et al.,* Defendants-Appellants.

(No. 57218;

First District (3rd Division)—May 3, 1973.

792

Harold J. Green, of Chicago, for appellants.

Paul M. Katzovitz, of Legal Aid Bureau, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendants pursue this interlocutory appeal from an injunctional order of the circuit court of Cook County, chancery division, commanding them to restore plaintiff to possession of Apartment 500, 5200 South Blackstone Avenue, Chicago, and his personal property located therein. Defendants obtained an order of the court staying the force and effect of the injunctional order pending this appeal.

Defendants raise four issues for our consideration: (1) Whether the complaint is sufficient on its face to be a basis for the granting of a temporary mandatory injunction; (2) Whether the trial court erred in granting a temporary mandatory injunction without hearing testimony where a verified answer and counterclaim were filed; (3) Whether the trial court erred in issuing a temporary mandatory injunction without bond; and (4) Whether the temporary mandatory injunction is enforceable.

We affirm.

The chancellor ordered the temporary injunction on the basis of the allegations of plaintiff's verified complaint and defendants' verified answer. The allegations which arise from the pleadings are as follows: Plaintiff, Stanton Brooks, entered into a one-year lease as lessee with lessor, Blackwood Apartment Hotel, which was owned by defendant Green, managed by defendant Kreps, and held in a land trust with defendant bank as trustee. The lease on Apartment 500 ran from May 1, 1971, to April 30, 1972, at a monthly rental of $175. A security deposit of $175 was paid. On February 25, 1972, plaintiff attempted to enter his apartment at the Blackwood Apartment Hotel, but the door was "plugged" in such a way that his key would not open it. At this time plaintiff had $2855 of personal property located in the apartment. Plaintiff's demand for admittance to the premises was refused. Plaintiff's attor-

ney telephoned defendant Kreps in order to demand a return of the premises and the personal property, but she refused. Plaintiff's attorney also sent a letter to Kreps making the same demands, but at the time plaintiff filed his complaint on March 10, 1972, he had not been allowed to re-enter the apartment nor had his personal property been returned.

In their answer, defendants allege that plaintiff was in arrears for his January, 1972, rent in the amount of $100.18 and for his February, 1972, rent in the amount of $175. Plaintiff presented defendants a check for $100.18 as payment for the January arrearages, but such check was returned for insufficient funds. Under the terms of the lease, the lessor provided a furnished apartment, linens, maid service, and telephone switchboard service. Clause 13 of the lease provided, in pertinent part:

> "IT IS EXPRESSLY AGREED, Between the parties hereto, that if default be made in the payment above reserved or any part thereof, * * * it shall be lawful * * * to declare said term ended, to reenter said demised premises or any part thereof and the said party of the second part (lessee), or any other person or persons occupying the same to expel, remove and put out, using such force as he may deem necessary in so doing, and the said premises again to repossess and enjoy as in his first estate * * *."

Defendant Kreps verbally notified the plaintiff that the check for $100.18 had been twice returned unpaid and that he owed a total of $278.28, which included overdue rent and telephone charges. She warned him that unless she received a certified check for the total amount in two days, she would terminate his tenancy. The answer further averred that the plaintiff became abusive, threatened to damage or destroy the furnishings in the apartment, and refused to pay the past-due rent. Believing that plaintiff would execute his threats, Kreps changed the locks on the door and obtained possession of the apartment. Kreps offered to permit plaintiff to remove his personal property from the apartment under certain conditions, but plaintiff refused.

In their answer, defendants relied on Clause 13 of the lease to justify their obtaining possession of the apartment without resorting to legal proceedings. They also asserted an innkeeper's lien on the plaintiff's personal property pursuant to Ill. Rev. Stat. 1971, ch. 82, par. 57. They objected to the plaintiff's seeking equitable relief, because they claim that he did not comply with the equitable maxims of "clean hands" and "a plaintiff who seeks relief from a court of equity, must himself offer to do equity."

Defendants counterclaimed for $453.28, which represented the unpaid rent for three months and telephone charges. In addition to asserting an innkeeper's lien on plaintiff's personal property, defendant claimed a

right to distrain the personal property for the past-due rental pursuant to Ill. Rev. Stat. 1971, ch. 80, par. 16.

Alleging that he had no adequate remedy at law, plaintiff stated in his complaint that (1) he had none of his personal belongings and effects necessary to manage his everyday affairs, (2) that he had no place to live, and (3) that he had a great fear that his possessions would not be secure.

On the basis of the complaint, answer, and counterclaim, the chancellor granted the plaintiff's prayer for temporary relief and issued an order without bond, commanding the defendants "to DESIST AND REFRAIN from selling, giving, transferring, or delivering possession of plaintiff's personal property in any way and to DESIST AND REFRAIN from denying the plaintiff access to Apartment 500, 5200 S. Blackstone, Chicago, Ill., and DESIST AND REFRAIN from refusing to deliver into plaintiff's possession said personal property in the possession of defendants."

Defendants' first contention is that plaintiff's complaint is insufficient to authorize the granting of temporary injunctive relief. Defendants direct our attention to *Schlicksup Drug Co. v. Schlicksup* (1970), 129 Ill.App.2d 181, 186, 262 N.E.2d 713, 715, where the court stated:

> "As a prerequisite to the issuance of the preliminary injunction, the plaintiff was required to establish the probability of the ultimate success on the merits of the case as well as the immediate need for the injunction to preserve the status quo and to prevent irreparable injury to its rights or property."

■■ Defendants argue that plaintiff has not made out a case for irreparable injury sufficient to warrant temporary injunctive relief. We believe that the reasons plaintiff set out in his complaint in the paragraph wherein he stated he had no adequate remedy at law sufficiently show irreparable damage of the degree necessary to authorize the granting of preliminary relief. He alleged that he had no place to live and did not have the use of any of his personal effects as a result of defendants' conduct. To relegate the plaintiff to the position of seeking relief in court under the forcible entry and detainer statutes (Ill. Rev. Stat. 1971, ch. 57), as the defendants suggest, would not prevent the immediate and serious possibility of harm to plaintiff's health as a result of being out on the street without his personal belongings. We believe it is highly presumptuous for the defendants to rely on self-help in obtaining possession of the apartment and then suggest to this court that the plaintiff, once deprived of possession, should have pursued the more orderly legal processes which the forcible entry and detainer laws make available.

■■■ Defendants also argue that plaintiff has not shown the prob-

ability of ultimate success on the merits. The probability of ultimate success on the merits depends not only on the sufficiency of plaintiff's complaint but also on the defenses raised by the answer. We shall consider the question of whether the answer raised a complete defense as part of defendants' argument that plaintiff did not show the probability of ultimate success on the merits. In their answer, defendants rely on Clause 13 of the lease for their right to self-help in gaining possession of the apartment upon default in the payment of rent. The latest Illinois case upholding the validity of a provision in a lease giving to the landlord the right on certain contingencies to re-enter without process or by such force as is necessary dates back to 1907. (See, Annot. 6 A.L.R.3d 177 (1966).) We believe the more modern enlightened view appears in *Jordan v. Talbot* (1961), 55 Cal.2d 597, 12 Cal.Rptr. 488, 361 P.2d 20. With Justice Traynor speaking for the majority of the court, the court held that a provision in a lease expressly permitting a forcible entry would be void as contrary to the public policy of the California forcible entry and detainer statutes. The court went on to say: "Regardless of who has the right to possession, orderly procedure and preservation of the peace require that the actual possession shall not be disturbed except by legal process." (55 Cal.2d 597, at 605, 12 Cal. Rptr. 488, at 492, 361 P.2d 20, at 24.) Without deciding the issue on the merits, we feel that *Jordan v. Talbot* expresses the modern trend on the subject, and we believe that Clause 13 of the lease was not a complete defense.

■■ Defendants fare no better in asserting an innkeeper's lien or the right to distress as justification for withholding plaintiff's personal property. We think that neither remedy authorized the defendants' use of self-help. Defendants must resort to judicial proceedings to distrain the property for the unpaid rent. *Faubel v. Michigan Blvd. Bldg. Co.* (1934), 278 Ill.App. 159.

■■ In *Fuentes v. Shevin* (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, the Supreme Court held that Florida's prejudgment replevin statute which authorized the taking of property without notice or prior hearing violated the Due Process Clause of the fourteenth amendment. In the instant case, we think that defendants' withholding of plaintiff's personal property pursuant to Ill. Rev. Stat. 1971, ch. 82, par. 57, without allowing plaintiff proper notice or hearing is violative of the general rule that due process requires proper notice and hearing before there can be a deprivation of property. See, *Collins v. Viceroy Hotel Corp.* (N.D.Ill. 1972), 338 F.Supp. 390.

■■ Defendants' second contention is that the chancellor should not have issued a temporary injunction without having heard testimony

where a verified answer and counterclaim were filed. "A temporary injunction cannot be predicated solely upon the pleadings where the material factual issues are controverted and the answer raises a complete defense. [Case omitted.]" (*Lipkin v. Burnstine* (1958), 18 Ill.App.2d 509, 518, 152 N.E.2d 745, 749.) It is improper for the chancellor to issue a preliminary injunction without first conducting a hearing on the controverted issues. *Schlicksup Drug Co. v. Schlicksup* (1970), 129 Ill.App. 2d 181, 262 N.E.2d 713.

■■ In defendants' verified answer, they admitted that the door to plaintiff's apartment was "plugged" and further added to and explained the facts and circumstances surrounding this action. They also admitted that at the time of the filing of the complaint, plaintiff had not been allowed to re-enter his apartment, nor had his personal property been returned to him. These two uncontroverted allegations are the crux of plaintiff's complaint. Plaintiff did not file a reply. It was not error for the chancellor to issue the temporary injunction on the basis of the uncontroverted allegations of the pleadings, and he did not abuse his discretion in not hearing testimony. *Seay & Thomas, Inc. v. Kerr's, Inc.* (1965), 58 Ill.App.2d 391, 208 N.E.2d 22.

■■ Defendants also object to the issuance of the injunction, because they allege that the plaintiff comes into a court of equity with unclean hands and that in order to seek equitable relief, the plaintiff must offer to do equity, which, they allege, he had not done. Defendants maintain that the payment of the January rent with a check which was returned for insufficient funds constitutes sufficient fraud or bad faith to show "unclean hands." They also maintain that the chancellor should not have granted the preliminary relief without ordering the plaintiff to pay the allegedly past-due rent and without ordering the plaintiff to refrain from damaging defendants' property. Such issues as whether the plaintiff's conduct was fraudulent in paying for his rent with a check subsequently returned unpaid can only be decided after a full hearing. (*Consumers Digest, Inc. v. Consumer Magazine, Inc.* (1968), 92 Ill.App.2d 54, 235 N.E.2d 421.) Defendants' raising of such equitable defenses does not preclude the issuance of a temporary injunction.

■■ Although the chancellor's order is couched in negative terms, in substance it is a mandatory order which commands the defendants to allow plaintiff to occupy the apartment and to return his personal belongings. Defendants argue that this order is improper, because it changes the *status quo* as it existed when the complaint was filed. The primary purpose of a preliminary injunction is to preserve the *status quo* until there can be a final hearing on the merits. The *status quo* which will be preserved by a preliminary injunction is "the last actual, peaceful, un-

contested status which preceded the pending controversy." (*Deisenroth v. Dodge* (1953), 350 Ill.App. 20, 111 N.E.2d 575.) Usually this is accomplished by keeping everything at rest. Sometimes, the condition of rest is exactly what will inflict the irreparable injury, and it is in such situations that it is proper for the chancellor to issue a temporary mandatory injunction. *Scholz v. Barbee* (1951), 344 Ill.App. 630, 101 N.E.2d 845.

■■ In *Quinn v. The Fountain Inn* (1920), Ill.App. 260, the court stated:

> "While, as a general rule, courts of equity will not interfere by preliminary injunction, to change the possession of real property, until the right to such change is determined at law, they will do so where it is clear from the allegations in the bill that the defendants' possession is but an interruption of the prior possession of the complaint, to which the latter was entitled. Thus, where a lessor or lessee has forcibly taken possession of the leased premises in violation of the terms of the lease, he may be compelled by mandatory injunction \* \* \* to surrender possession to the one entitled thereto \* \* \*. By so doing, the *status quo,* as established by the terms of the lease, as described by the allegations of the bill \* \* \* is preserved until the controversy can be heard on its merits. 218 Ill.App. 260, at 263. See Annot. 15 A.L.R. 2d 213, 274 (1951)."

■■ In the instant case the last actual peaceable uncontested status was that of the plaintiff in possession of his apartment. The defendants' exclusion of the plaintiff from his apartment was but a mere interruption of such possession. Although the defendants object that the chancellor's order required them to undo certain acts which they did before the complaint was filed, this is a case where, because there was a showing of great necessity, the issuance of a mandatory injunction was proper. *Ambassador Foods Corp. v. Montgomery Ward & Co.* (1963), 43 Ill.App. 2d 100, 192 N.E.2d 572.

■■ Defendants' third contention is that the chancellor erred in issuing the injunctive order without bond. According to Ill. Rev. Stat. 1969, ch. 69, par. 9, it is discretionary with the court as to whether it will require the posting of a bond before it issues a preliminary injunction. The case cited by the defendants, *Hoffman v. City of Evanston* (1968), 101 Ill.App.2d 440, 243 N.E.2d 478, was decided under a 1967 Amendment which withdrew from the courts the right to waive the posting of bond and left for the courts the sole responsibility of determining the proper amount of bond. The 1969 Amendment which is applicable to the instant case restored to the chancellor discretion to decide whether or not a

bond would be required. (See, *John Deere Co. v. Metzler* (1964), 51 Ill. App.2d 340, 201 N.E.2d 478.) The lease showed that plaintiff had already paid the required $175 security deposit.

■■ Under the circumstances of the instant case, we do not think the chancellor abused his discretion by not requiring plaintiff to post a bond. This is not a case where a very highly valued interest in property is immobilized as a result of the imposition of a temporary injunction to the extent that there is a serious financial matter. (*Schaefer v. Stephens-Adamson Mfg. Co.* (1962), 36 Ill.App.2d 310, 183 N.E.2d 575.) In passing, we note that the chancellor did require the defendants to post a $5000 appeal bond and bond for costs and damages, but at the same time he stayed the force and effect of the injunctional order.

Defendants' final contention is that the injunctional order is void and unenforceable, because it did not comply with the relevant statute which prescribes the form which an injunctional order is to take. Ill. Rev. Stat. 1969, ch. 69, par. 3—1, provides, in pertinent part:

> "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; * * *."

■■ We find no merit in defendants' argument that the order was defective because it stated "for good cause shown" and did not explicitly state the reasons for its issuance. The issues in the case were clear enough so as to obviously apprise the defendants of the chancellor's reasoning in issuing the injunctional order. The order clearly and concisely advised the defendant of the ruling of the court and the precise conduct mandated, and otherwise complied with the requirements of the statute. (*Illinois School Bus Co. v. South Suburban Safeway Lines, Inc.* (1971), 132 Ill.App.2d 833, 270 N.E.2d 200.) To defendants' argument that the order improperly granted the plaintiff all the relief which he would have obtained upon the issuance of a final injunctional order, we reiterate that the order merely preserved the *status quo* pending further inquiry into the merits of the case.

■■ The granting of a temporary injunction resides in the sound discretion of the chancellor. Unless we find an abuse of discretion, we will not set aside the chancellor's order. (*Schultz v. Agenlian* (1967), 90 Ill.App.2d 131, 234 N.E.2d 345.) In deciding whether to issue a preliminary mandatory injunction, it is proper for the chancellor to balance the relative convenience and injury to the parties which would result. (*Davis v. East St. Louis and Interurban Water Co., Inc.* (1971), 133 Ill.App.2d 801, 270 N.E.2d 424.) In the instant case the injury

and inconvenience to the plaintiff of being unknowingly and suddenly without a place to live and without his basic personal belongings is severe in comparison to the defendants having to allow the plaintiff the use of one of their apartments pending resolution of the issues on the merits. We believe the chancellor acted fairly in temporarily relegating the plaintiff and defendants to positions which would create the least injury to both parties.

For the above reasons, the order of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and McNAMARA, J., concur.