MAX LEAVITT *et al.*, Plaintiffs-Appellees, *v.* CHARLES R. HEARN, INC., Defendant-Appellant.

(No. 57778;

First District (3rd Division)—May 16, 1974.

Seymour M. Lewis, of Chicago (Ellis B. Rosenzweig, of counsel), for appellant.

David H. Greenstein, of Chicago (Alan J. Scheffres, of counsel), for appellees.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

On February 15, 1972, the plaintiffs, Max and Anne Leavitt, filed a replevin action in the circuit court of Cook County seeking the return of their automobile and certain personal property contained therein, allegedly seized by the defendant auto dealer, Hearn, Inc., without plaintiffs' consent and absent proper legal process. Plaintiffs also sought compensatory damages. Defendant filed a counterclaim for the amount allegedly due for mechanical work performed on plaintiffs' auto. The trial judge, sitting without a jury, awarded possession of the automobile and personal property to plaintiffs, as well as $275.28 in damages. The judge also dismissed defendant's counterclaim. Defendant appeals.

The facts are undisputed. On January 17, 1972, after plaintiff's auto failed to start, Mr. Leavitt had the vehicle towed to defendant's place of business. Leavitt informed defendant's service manager that he wanted the ignition problem fixed and a malfunctioning heater repaired. Leavitt also directed that no other work was to be performed on the vehicle without first securing his permission.

When Leavitt returned to pick up his auto 11 days later, he gave defendant a check payable to it in the amount of $58.45 for the work performed on the vehicle. After driving a short distance, it became apparent to Leavitt that the heater was not working properly, and he drove over to the side of the road and turned off the motor. When the auto failed to start a few minutes later, Leavitt telephoned his bank and stopped payment on the check.

Leavitt later complained to defendant that it not only had failed to perform the work he had requested but also that it had ignored his prohibition against performing unauthorized work. He subsequently had the vehicle serviced by another mechanic.

About 2 weeks later, on Sunday morning, February 13, Leavitt stopped at a restaurant to have breakfast. He parked the auto in the adjacent lot. When he returned a short time later, the vehicle was missing. He called the police to report it stolen; however, the police informed him that they already had been notified by defendant that it had taken the auto. When attempts to resolve the dispute voluntarily failed, this action was commenced.

Defendant contends that its surrender of the vehicle did not constitute a relinquishment of its mechanic's lien for the work it had performed. Assuming that proposition to be true, defendant next argues that it was entitled to enforce its lien without legal process as long as no actual breach of the peace ensued. Defendant finally contends that plaintiffs' failure prior to trial to tender to defendant the amount due it omitted fulfillment of a condition precedent to bringing a replevin action.

Before addressing ourselves to defendant's contentions, we must comment on a footnote contained in defendant's brief which states that "the remedy of replevin has been held unconstitutional. *Fuentes v. Shevin* (1972), 407 U.S. 67." This statement is overbroad and inaccurate. *Fuentes* and a companion case dealt with the constitutionality of a particular feature, specifically the "writ of replevin" provision, contained in the replevin statutes of Florida and Pennsylvania. This provision had enabled the plaintiff, as owner of the chattel, prior to trial and without notice to defendant, the possessor of the chattel, to regain possession of the chattel. The fact that defendant was compelled to surrender the property without even a summary determination of the

relative rights of the disputing parties led the Supreme Court to declare such a provision a deprivation of property without due process of law. In *Brooks v. La Salle National Bank* (1973), 11 Ill.App.3d 791, 298 N.E.2d 262, we subscribed to that holding, and extended its rationale to the area of landlord lien distress. But, as was noted in *Fuentes*, its holding is quite narrow. A single statutory provision, the writ of replevin section, was declared unconstitutional. To maintain that the entire statutory scheme relating to replevin actions is unconstitutional, however independent the other sections may be to the writ section, is unsupportable.

■■ If defendant's footnote is an attempt to apply the *Fuentes* holding to the Illinois writ provision existing at the time of trial, we must reject the effort. In the first place, defendant has never directly made the provision an issue in the present case. Moreover, *Fuentes* applied to an appeal by the possessor of a chattel from a judicial order refusing to enjoin the state's enforcement of the writ provision, and the Court's decision, unlike the present case, dealt with the constitutionality of pretrial procedures pending a trial on the merits. Additionally, it appears inconsistent to permit defendant, which seized plaintiffs' vehicle without their consent and absent any legal process, to suggest that plaintiffs' use of a replevin action would be unconstitutional.

Defendant's first contention is that its mechanic's lien for work performed on plaintiffs' vehicle continued even after it had surrendered actual possession of the vehicle in exchange for plaintiffs' check. This argument rests upon defendant's interpretation of the Illinois mechanic's small lien statute. (Ill. Rev. Stat. 1971, ch. 82, par. 47(a) *et seq.*) Paragraph 47(a) reads as follows:

"Labor, services, materials or storage of chattels.] § 1. Every person expending labor, services, skill or material upon or furnishing storage for any chattel at the request of its owner, authorized agent of the owner, or lawful possessor thereof, in the amount of $200 or less, shall have a lien upon such chattel beginning upon the date of commencement of such expenditure of labor, services, skill, or materials or furnishing of storage, for the contract price for all such expenditure of labor, services, skill, or material, until the possession of such chattel is voluntarily relinquished to such owner or authorized agent, or to one entitled to the possession thereof. * * *"

Defendant maintains that the term "voluntarily relinquished" means that possession is only so relinquished, and hence the lien is only lost, at the time the check is honored or the debt otherwise paid. Plaintiffs counter that defendant "voluntarily relinquished" possession of the ve-

hicle when it surrendered actual possession, thereby extinguishing its lien irrespective of the fact that the check was later dishonored.

■ ■ In our view, the mechanic's lien in paragraph 47(a) survives the mechanic's surrender of actual possession of the specified chattel in return for the owner's check until the draft is honored. In furthering the objective of the legislature in paragraph 47(a), the term "possession" rather than the term "voluntarily relinquished" demands our interpretation. Thus, when a mechanic exchanges the auto for the owner's draft, he is voluntarily relinquishing only *actual* possession of the auto, while *legal* possession continues in his behalf until the draft is honored or the debt otherwise paid. A primary consideration for that determination is the essential nature of a check. The mere issuance of a check does not constitute an immediate assignment of funds from the drawee to the payee. This takes place only when the drawee accepts the instrument. (Ill. Rev. Stat. 1971, ch. 26, par. 3—409(1).) A draft is a written promise to pay, and the underlying obligation, suspended pro tanto when the draft is issued, is resurrected if the draft is later dishonored. (Ill. Rev. Stat. 1971, ch. 26, par. 3—802.) In view of the conditional nature of a draft and the easy means at the drawer's disposal to order the drawee to stop payment on the draft, we do not believe that the legislature intended the mechanic's lien to be as easily displaced as the plaintiffs suggest. This construction also appears to be in keeping with the clearly evidenced legislative intent to create a ready means for a small claims' creditor to establish a specific lien.

A similar result has been reached in all the jurisdictions which have considered the issue. (*Maxton Auto Co. v. Rudd* (1918), 176 N.C. 497, 97 S.E. 477; *Frost Motor Co. v. Pierce* (1945), 72 Ga.App. 447, 33 S.E.2d 910; *Yellow Manufacturing Credit Corp. v. Horowitz* (1938), 2 N.Y.S.2d 566, 166 Misc. 251.) In *Maxton,* in which the facts were strikingly similar to those in the instant case, the court stated (176 N.C. at 499, 97 S.E. at 478) that once a defendant stops payment on his check

> "* * * he must restore plaintiff's possession and put him in the position to enforce his mechanic's lien for the amount due. No doubt defendant had no fraudulent purpose in giving the check, and the jury have found that there was no actual fraud, but, having obtained possession of his car under a promise to pay cash, on refusal, he is estopped to resist enforcement of the mechanic's lien by reason of the possession thus acquired."

We agree with the trial judge that neither party perpetrated a fraud in the present case. We conclude that defendant's mechanic's lien survived its surrender of actual possession of the vehicle to the plaintiffs.

Our acceptance of defendant's first argument does not mean, however,

that we agree with defendant's next contention that it was entitled to enforce its lien without legal process.

Defendant contends that it was permitted to employ a self-help remedy to obtain the chattel, without notice to or consent of the owners, and absent legal process, in enforcing its mechanic's lien so long as no breach of the peace resulted. We do not agree.

■■ The Illinois Mechanic's Small Lien Statute is silent regarding any self-help remedy. We believe that the reason for this is that the legislature intended that the lienor utilize the same normal judicial procedures in resolving disputes and enforcing debts that other creditors are required to use. The fact that the statute gives the mechanic an easy way to create a lien does not of itself permit the mechanic to employ the "law of the streets" to enforce it. (Contra: *Gordon v. Sullivan* (D.C. Cir. 1951), 188 F.2d 980.) In *Brooks v. La Salle National Bank* (1973), 11 Ill.App.3d 791, 298 N.E.2d 262, this court rejected an argument similar to the one made by the defendant in the present case. We also note that, in all the cases cited by defendant in support of its first contention that its surrender of the vehicle did not constitute a relinquishment of its lien, the mechanics involved utilized proper judicial procedures to enforce their liens.

The Illinois legislature has shown favor to the mechanic by creating easy means for him to obtain and preserve liens and by allowing him to proceed against the specific chattel to enforce the unpaid debt. However, the legislature did not exempt the mechanic from the courtroom as the proper forum to weigh the relative rights of the disputing parties.

Moreover, even if we were to read into the statute the self-help doctrine defendant proposes, there would be no guarantee that defendant would prevail, since problems of a constitutional magnitude would arise. The decisions of courts throughout the nation clearly reflect the constitutional onslaught against prejudgment self-help remedies. Not only have such remedies been struck down in the fields of wage garnishment (*Sniadach v. Family Finance Corp.* (1969), 395 U.S. 337) and writs of replevin (*Fuentes v. Shevin*), but also in the areas of statutory attachment (*Randone v. Appellate Department* (1971), 5 Cal.3d 536, 96 Cal. Rptr. 709, 488 P.2d 13, *cert. denied* (1972), 407 U.S. 924), non-wage garnishment (*Larson v. Fetherston* (1969), 44 Wis.2d 712, 172 N.W.2d 20; *Jones Press, Inc. v. Motor Travel Services, Inc.* (1970), 286 Minn. 205, 176 N.W.2d 87), and landlord liens (*Brooks v. La Salle Nat. Bank, supra*).

■■ Defendant cites the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 9—503) in support of its position that it should be entitled to exercise self-help in a mechanic's lien situation. That provision expressly gives a creditor the right to regain possession of a chattel upon

default by the debtor without the use of judicial process as long as no breach of the peace ensues. We do not consider the analogy appropriate. While the legislature has made a careful and deliberate decision expressly authorizing the utilization of a self-help remedy in the commercial law context, the statute involved in the present case is silent regarding such authorization. We will not write into the statute such an exception to normal judicial procedures. Furthermore, this provision is under attack as permitting indirectly what *Fuentes* directly forbade. Until this provision is squarely presented for constitutional adjudication, we are unwilling to accept it as secondary authority.

We also reject defendant's presumption that, because no actual violence occurred in the taking of the vehicle from the restaurant parking lot, no breach of the peace ensued. As far back as *Atkinson v. Lester* (1837), 2 Ill. (1 Scam.) 407, Illinois courts have held that implied force may also constitute a breach of the peace. In *Phelps v. Randolph* (1893), 147 Ill. 335, 35 N.E. 243, while interpreting a forcible entry and detainer statute, the court defined forcible entry to mean "no more than the term 'vi et armis' means at common law; that is, with either actual or implied force." The court further stated, at page 341, that the landlord was obligated to use the judicial process to evict the tenant, because "an entry in the absence of a party in possession, against his will, may be regarded as forcible."

■■ Defendant's final contention is that the failure of the plaintiffs to tender to it the amount allegedly owed the defendant constituted a failure to perform a condition precedent to bringing a replevin action. However, at trial defendant made no specific allegation to that effect. The only pleading lending any support to defendant's claim was entitled "Complete and Separate Defense," in which the defendant combined an affirmative defense with a counterclaim. In that pleading, defendant charged in paragraph 12 that "the plaintiffs have not paid the defendant the amount due for services and material applied." That averment, however, was made in support of defendant's claim for damages rather than for the omission of a condition precedent. We believe that the issue has been waived.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY and McGLOON, JJ., concur.