2026 IL App (1st) 260279

FIFTH DIVISION
February 24, 2026

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-26-0279

| | | |
|---|---|---|
| ASHLEY JEFFERSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Petitioner, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2025 CH 10811 |
| | ) | |
| THE CHICAGO HOUSING AUTHORITY, | ) | Honorable |
| | ) | D. Renee Jackson, |
| Defendant-Respondent. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1 This is an expedited appeal from the circuit court's denial of plaintiff Ashley Jefferson's motion to temporarily enjoin the Chicago Housing Authority (CHA) from terminating her participation in the housing choice voucher program pending the outcome of her challenge to the merits of that decision. The circuit court concluded that Ms. Jefferson had failed to make the requisite showing for such relief. For the reasons that follow, we disagree. The court's order is reversed, and CHA is ordered to make rent subsidy payments on Ms. Jefferson's behalf, retroactive to November 1, 2025, pending the outcome of her challenge to its final decision in this matter.

¶ 2                                    I. BACKGROUND

¶ 3                        A. The Housing Choice Voucher Program

¶ 4     The housing choice voucher program is a federal rent-subsidy program authorized by Section 8 of the United States Housing Act of 1937 (Housing Act). 42 U.S.C. § 1437f(a) (2024). The United States Department of Housing and Urban Development (HUD) oversees the program, and local public housing agencies like CHA administer it. See *id.* § 1437f; 24 C.F.R. § 982.1(a)(1) (2024). Under the Housing Act and its enabling regulations, the CHA gives program participants vouchers to rent properties in the private market. 24 C.F.R. § 982.302(a) (2024). The CHA pays a portion of a participant's rent each month based on the participant's income, in accordance with a Housing Assistance Payment (HAP) contract with the landlord. *Id.* § 982.311(a). Participants are required to comply with certain prohibitions and requirements, referred to as "Family Obligations," and the failure to do so may result in their termination from the program. *Id.* §§ 982.551, 982.552(c)(i). Before benefits under the program are terminated, a participant is entitled to an informal administrative hearing, at which the CHA has the burden of proving a violation by a preponderance of the evidence. *Id.* §§ 982.555(a)(1), (e)(6).

¶ 5                    B. Proceedings Before the CHA in this Case

¶ 6     Ms. Jefferson resides with her four minor children in a rental property in Chicago and first became a participant in the housing choice voucher program in 2012. On April 14, 2025, the CHA issued Ms. Jefferson a termination notice stating that it had "received verified information" that an individual named Deonte Jermaine Black lived in Ms. Jefferson's subsidized rental unit and that Ms. Jefferson also had unreported income. CHA alleged that "[b]ased on these infractions," the family had violated the following Family Obligations:

> "Supply any information the CHA or HUD determine to be necessary for use in administering the Program, including conducting a regularly scheduled re-examination or interim re-examination of family income and composition. See 24 CFR 982.551(b)(1)-(2).

Use the assisted unit for residence only by the family that is listed on the HAP contract and the lease. The unit must be the family's only residence.

Request CHA's written approval to add any other family member as an occupant of the unit.

Report all changes in annual income within 30 days if the family has zero income prior to the change.

The family (including each family member) must not Commit [*sic*] fraud, bribery, or any other corrupt or criminal act in connection with any federal housing program (24 CRF 982.551(k)."

Ms. Jefferson requested a hearing, and one was held on August 19, 2025.

¶ 7    CHA called as its sole witness an individual identified only as S.B., who stated that she was an employee of CVR & Associates, a third-party vendor employed by CHA to help administer the voucher program. No transcript of the hearing appears in the supporting record, but according to the hearing officer's decision letter, issued on September 29, 2025, S.B. stated that "Ms. Jefferson violated the Code of Federal Regulation and the Family Obligations." S.B. testified that CHA had "received verified information" that Mr. Black lived in the subsidized rental unit and that Ms. Jefferson had unreported income. S.B. then detailed for the hearing officer two requests CHA had made for Ms. Jefferson to provide it "missing documents" regarding these purported violations: proof of her income and proof of Mr. Black's residence. S.B. also noted that "Deonte" was listed as an emergency contact on Ms. Jefferson's application for continued eligibility, though he was not listed as a household member.

¶ 8    Ms. Jefferson then testified. She stated that she is 37 years old, not disabled, and unemployed. She lives with her four children, who are 17, 12 (twins), and 10 years of age. Mr.

3

Black is the children's father, but she is no longer in a relationship with him. He lives with his current girlfriend and her children at another address in Chicago. Ms. Jefferson stated that she is willing to submit the requested documentation and wishes to remain a participant in the voucher program. She explained that she submitted "the only information available" to her regarding Mr. Black's residence, an expired state identification card, and was unable to obtain a lease or other documentation of his residence. Ms. Jefferson has no proof of income because she earns no income. She has moved around too much to keep a job. Her utility bills are paid by the Community and Economic Development Association of Cook County (CEDA), and she obtains food for her family from food pantries. She does not file income tax returns.

¶ 9     Based on this, the hearing officer concluded that CHA had shown, by a preponderance of the evidence, that Ms. Jefferson violated the Family Obligations listed in the termination notice and that CHA should terminate her participation in the voucher program. The hearing officer stated that "S.B. was a credible witness" who "presented clear testimony about the CHA policies and procedures," was familiar with Ms. Jefferson's file, and "answered questions truthfully and credibly." Ms. Jefferson, on the other hand, he found "was non-credible and vague regarding her failure to submit the requested documentation" and "was adamant that Mr. Black reside[d] with his girlfriend and their children and not in her subsidized unit," testimony that the hearing officer disbelieved without stating why.

¶ 10                    C. Proceedings in the Circuit Court

¶ 11     Ms. Jefferson first sought judicial review of CHA's termination of her participation in the voucher program as a *pro se* litigant. She subsequently obtained counsel and, on February 4, 2026, attorneys with Legal Aid Chicago filed on her behalf an amended petition for certiorari in the circuit court. Ms. Jefferson alleged in her petition that CHA's decision was clearly erroneous

because it "relie[d] on hearsay and provide[d] no documentary evidence to find [that she] violated her family obligations," "improperly disregarded [her] unimpeached and uncontradicted testimony," "relied on evidence not in the record to which Ms. Jefferson had no opportunity to review or respond," and "improperly shifted the burden of proof from CHA to [her]" by "relying on [her] inability to prove a negative" as its sole justification for terminating her from the housing choice voucher program. She argued that CHA failed to meet its burden of proving the allegations in its termination notice by a preponderance of the evidence because the only evidence of a program violation it introduced was unattributed hearsay. Ms. Jefferson also alleged that she "could not and cannot be expected to produce documents that, respectively, do not exist or that she has no control over, to rebut allegations presented without evidence and predicated entirely on hearsay." She asked the circuit court to reverse CHA's decision or to remand the matter to the agency for a new hearing.

¶ 12    Simultaneously with her amended petition, Ms. Jefferson filed an emergency motion asking the circuit court to order CHA to continue making housing assistance payments on her behalf pending the outcome of this matter, under section 3-111(a) of the Code of Civil Procedure (735 ILCS 5/3-111(a) (West 2024)), pursuant to which the court may stay the decision of an administrative agency for good cause, or, alternatively, as an exercise of its inherent authority to grant temporary injunctive relief. Ms. Jefferson argued that a stay was necessary to preserve the status quo, that it would neither endanger the public nor run afoul of public policy, and that she was likely to succeed on the merits. She argued she was alternatively entitled to a temporary restraining order (TRO), because she and her minor children faced homelessness if her subsidy payments did not resume pending a determination of the merits of her claim, which would result in irreparable harm that no adequate remedy at law could later compensate her for. She attached

to her motion a 30-day notice of termination for nonpayment of rent letter that she had already received from her landlord.

¶ 13    CHA opposed the motion on grounds that were adopted in full by the circuit court in its February 11, 2026, order denying Ms. Jefferson's motion. The court concluded that there was "no emergency" because no eviction action had yet been filed against Ms. Jefferson. It further concluded that because CHA had already ceased making payments to subsidize Ms. Jefferson's rent, a reinstatement of payments would actually be a reversal of, and not a continuation of, the status quo. And it concluded that Ms. Jefferson had failed to demonstrate a likelihood of success on the merits because she was the one who bore the burden on judicial review and "[s]he was terminated for multiple violations, including failing to provide proof of income and failing to demonstrate that no unauthorized tenant resided in her unit." Finally, the court concluded that "the balance of the equities favored [CHA] as there [wa]s a compelling public policy interest in enforcing Housing Choice Voucher Program rules, policies and procedures."

¶ 14    Ms. Jefferson now appeals.

¶ 15                                    II. JURISDICTION

¶ 16    The circuit court denied Ms. Jefferson's emergency motion for a TRO staying enforcement of the CHA's final administrative decision to terminate her participation in the housing choice voucher program on February 11, 2026. Two days later, on February 13, 2026, Ms. Jefferson filed a petition for appeal from that order in this court and a notice of interlocutory appeal in the circuit court. We have jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 307(a), which provides for an appeal as of right from an interlocutory order of the circuit court "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction," and Rule 307(d), which establishes special expedited procedures where, as here, the appeal is from an order granting

6

or denying a TRO. Ill. S. Ct. R. 307(a), (d) (eff. Nov. 1, 2017).

¶ 17                                    III. ANALYSIS

¶ 18     This appeal is from the circuit court's denial of Ms. Jefferson's emergency motion for an order requiring the CHA to continue making housing assistance payments on her behalf pending the outcome of her challenge to its final decision to terminate her participation in the housing choice voucher program. She has cited two bases for this relief.

¶ 19     The first, section 3-111(a) of the Code of Civil Procedure, provides that one of the powers of the circuit court "upon notice to the agency and good cause shown," is "to stay the decision of [an] administrative agency in whole or in part pending the final disposition of the case." 735 ILCS 5/3-111(a)(1) (West 2024). A party requesting such relief must show "(i) that an immediate stay is required in order to preserve the status quo without endangering the public, (ii) that it is not contrary to public policy, and (iii) that there exists a reasonable likelihood of success on the merits." *Id.*

¶ 20     The second basis on which Ms. Jefferson has sought relief is the inherent authority of the circuit court to issue a TRO or preliminary injunction during the pendency of the case before it. *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d 138, 146 (1992). The purpose of such relief is not to adjudicate the merits of the parties' underlying dispute, but "to prevent a threatened wrong or injury pending a full hearing on the merits." *People ex rel. Sklodowski v. State*, 162 Ill. 2d 117, 131 (1994). A party seeking a TRO or preliminary injunction must "demonstrate that there is a 'fair question' as to each to each of the following: (1) a clear right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case." *Abbinanti v. Presence Central and Suburban Hospitals Network*, 2021 IL App (2d) 210763, ¶ 15.

¶ 21    The grant or denial of injunctive relief, including a stay order, is a matter within the trial court's discretion that we review for an abuse of that discretion. *Id.* As we have explained, however, under that "rubric" of abuse of discretion, we must apply other standards of review, depending on whether the underlying issue is one of fact or law. *Shulte v. Flowers*, 2013 IL App (4th) 120132, ¶ 24. "[T]o the extent that the trial court's decision rests on a purely legal issue," for example, such as how to define the status quo, our review is *de novo*. *Id.*

¶ 22    We conclude that under either of the above frameworks—a stay order under section 3-111(a) of the Code or a TRO—Ms. Jefferson has demonstrated that she was entitled to the relief requested here.

¶ 23                            A. A Stay Under Section 3-111 of the Code

¶ 24    In concluding that there was "no emergency" here, the circuit court essentially concluded that the first element under section 3-111(a) of the Code—that a stay is required to preserve the status quo—was not established. The court was under the impression that eviction proceedings had to have already been initiated against Ms. Jefferson before an immediate stay of CHA's final decision to terminate her rent subsidies could be ordered. We disagree.

¶ 25    Ms. Jefferson attached to her motion a 30-day notice for nonpayment of rent that she has already received from her landlord. While this is not an eviction order, it is a familiar first step towards eviction. If Ms. Jefferson does not pay the rent, which she has stated she cannot do without the subsidies, the failure by CHA to pay subsidies will clearly result in the eviction of her family from the rental unit. It would be pointless and unnecessary to force her to wait to seek a stay until the situation is even more dire and the landlord has actually initiated eviction proceedings in court. That the letter does not appear to be signed or dated does not change the fact that, having failed to pay rent for going on four months now, Ms. Jefferson is certainly in danger of being evicted.

8

¶ 26    A stay order would also not, as the circuit court was persuaded, represent a departure from the status quo. The court concluded that because Ms. Jefferson sought judicial review on October 27, 2025, after CHA had made its last payment on October 1, 2025, that the status quo was her nonparticipation in the housing voucher program. But that payment was for the entire *month* of October, making her an active participant until October 31. As a purely legal matter, the status quo a stay is intended to preserve is also not necessarily the precise circumstances that exist when litigation is initiated. Rather, it is "the last, actual, peaceable, uncontested status that preceded the pending controversy." *Ron & Mark Ward, LLC v. Bank of Herrin*, 2024 IL App (5th) 230274, ¶ 57. We agree with Ms. Jefferson that the last peaceable status before the pending controversy was her status as a participant in the CHA voucher program before the CHA decided to terminate her. Ms. Jefferson's reinstatement at the same level of assistance she was receiving at that time will not require, as CHA suggests, for it to put her through a new re-certification process. And if, as CHA also suggests, the HAP contract with Ms. Jefferson's landlord expired when her assistance was discontinued, then a new contract must be entered into, on the same terms, until the merits of this case are reached. We suspect that the landlord would prefer that outcome to having to initiate eviction proceedings, particularly if the courts later reverse the decision to terminate her assistance.

¶ 27    Nor will a stay of CHA's final determination here endanger the public or contradict public policy. The consequences from a relatively short delay in the agency's ability to enforce the rules of the housing choice voucher program and potentially free up one additional rental unit to another eligible participant are minimal compared the disruption and hardship Ms. Jefferson and her four minor children will face if they are evicted for even a short period of time from their home.

¶ 28    Ms. Jefferson has also certainly demonstrated at least a reasonable likelihood of success on the merits. CHA had the burden of demonstrating by a preponderance of the evidence that Ms.

Jefferson violated the Family Obligations. All it had to support its allegations that Ms. Jefferson had unreported income and was allowing an unreported person to live in the subsidized unit was unattributed hearsay. S.B. testified at the hearing that "CHA received verified information" of both situations. The source and specific recipient of that information were not identified. Nor did CHA disclose the date the information was received, how it was received, or what CHA or S.B. did to "verify" it.

¶ 29    As Ms. Jefferson points out in her petition for certiorari in the circuit court, pre-termination hearings must provide program participants with "an effective opportunity to defend by confronting any adverse witnesses and by presenting [their] own arguments and evidence orally." *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970). Although the introduction of hearsay evidence is generally permitted at an administrative hearing, the hearing officer must inquire as to the reliability of such evidence, and "any factual determination based on hearsay and unsupported by other competent evidence in the record must be reversed." *Kurdi v. DuPage County Housing Authority*, 161 Ill. App. 3d 988, 994 (1987). The CHA's own administrative plan makes this clear. See "Housing Choice Voucher Program Administrative Plan" (eff. Oct. 1, 2025), at 16-7, available at https://www.thecha.org/sites/default/files/2025- 06/2026AdministrativePlan_06.25_BoardApp rovedPolicies.pdf (last visited February 19, 2026) ("Hearsay evidence will be admissible at informal hearings; however, hearsay evidence alone cannot be used as the sole basis for the hearing officer's decision.").

¶ 30    Lacking sufficient evidence to prove these potential violations of the Family Obligations, CHA demanded that Ms. Jefferson produce documents *disproving* them. And when she could not do so, it terminated her for failing to produce documents it deemed "necessary" for its administration of the voucher program. But any requirement that a participant provide information

to the CHA must be understood as a requirement to provide information that a participant actually posses or could obtain. A participant cannot be terminated for failing to produce documents that she has no reasonable ability to obtain.

¶ 31    Yes, the hearing officer stated in his decision letter that he found S.B., CHA's witness, to be credible, but S.B. only testified to the uncontested facts that Ms. Jefferson was asked for certain documents and did not provide them. Ms. Jefferson's own testimony that she had no such documents because they did not exist—and her rational explanations for why that was—was uncontradicted. The hearing officer simply stated, without any explanation, that he did not believe her. All of this, we are quite convinced, gives Ms. Jefferson a reasonable chance of success on the merits. CHA's repeated insistence that Ms. Jefferson has already had numerous chances to produce the documents in question completely misses the point. A decision on the merits will concern whether it was ever proper for CHA to require her to produce such documents as a condition of her continued participation in the program, and on that point, Ms. Jefferson may well prevail.

¶ 32                          B. A Temporary Restraining Order

¶ 33    As Ms. Jefferson notes, the elements that must be shown to obtain a temporary restraining order overlap significantly with those that must be shown for a stay order under section 3-111(a) of the Code. The "clear right in need of protection" needed for a TRO is a concern that, in our view, parallels the Code's requirement that "an immediate stay is required in order to preserve the status quo," which we have already found was met here. Compare *Abbinanti*, 2021 IL App (2d) 210763, ¶ 15, with 735 ILCS 5/3-111(a)(1) (West 2024); see also *Tolliver v. Housing Authority of County of Cook*, 2017 IL App (1st) 153615, ¶ 22 (noting that a participant's ability to continue to occupy subsidized housing is an established and protectable property interest). The requirement that a party seeking a TRO demonstrate a "fair question" as to his or her "likelihood of success on

the merits" also parallels the Code's requirement that there be a "reasonable likelihood of success on the merits." Compare *Abbinanti*, 2021 IL App (2d) 210763, ¶ 15, with 735 ILCS 5/3-111(a)(1) (West 2024).

¶ 34    The two other elements that the proponent of a TRO must show are (1) an "irreparable injury in the absence of an injunction" and (2) "no adequate remedy at law." *Abbinanti*, 2021 IL App (2d) 210763, ¶ 15. As to the first of these, we agree with Ms. Jefferson that the circuit court erred when it looked only to whether she and her family had already, at the time of the hearing, had formal eviction proceedings initiated against them. The question is whether, in the absence of an injunction, an irreparable injury *will* be suffered. Ms. Jefferson persuasively argues that an eviction filing alone will have an adverse impact on her credit and ability to find housing in the future. And that is in addition to the physical, mental, and financial harm that will inevitably be suffered if she and her children are forced from their home. See *Brooks v. LaSalle National Bank*, 11 Ill. App. 3d 791, 796 (1973) (plaintiff's allegations that he would have no place to live and be unable to use any of his personal effects if evicted were a showing of irreparable injury sufficient to warrant temporary injunctive relief). CHA's insistence that any threat of homelessness here is merely "speculative and based on opinion" denies the realities that its participants face. Its suggestion that Ms. Jefferson brought this situation on herself by taking the time to withdraw her initial *pro se* filings and seek the assistance of counsel is also misplaced. Litigants facing or attempting to initiate complicated legal proceedings are encouraged to seek representation where they can, and Ms. Jefferson's counsel has ably and expeditiously assisted her here.

¶ 35    Finally, for a remedy at law to be adequate, such that injunctive relieve is improper, that remedy "must be concise, complete, and provide the same practical and efficient resolution as the equitable remedy would provide." *Hough v. Weber*, 202 Ill. App. 3d 674, 687 (1990). Here, we

agree with Ms. Jefferson that it would be difficult if not impossible to affix an amount of damages, after the fact, to address the harms that even a temporary eviction would cause. Moreover, we doubt that any monetary remedy could compensate for the emotional and physical toll that a period of homelessness would place on this family.

¶ 36                                     III. CONCLUSION

¶ 37    For all of the above reasons, we reverse the circuit court's order denying Ms. Jefferson's request for temporary injunctive relief. CHA is ordered to make housing assistance payments on Ms. Jefferson's behalf, at the same level and retroactive to November 1, 2025, pending the outcome of her challenge to its final decision terminating her participation in the housing choice voucher program.

¶ 38    Reversed and remanded. Mandate to issue immediately.

*Jefferson v. Chicago Housing Authority*, **2026 IL App (1st) 260279**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 25-CH-10811; the Hon. D. Renee Jackson, Judge presiding. |
| **Attorneys for Appellant:** | Matt Maxson and Neal Kitterlin, of Legal Aid Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert Latta, Assistant General Counsel, Chicago Housing Authority, for appellee. |