General Electric Company, Plaintiff-Appellee, v. Local 997 United Automobile Workers of America, Affiliated with American Federation of Labor; International Union, United Automobile Workers of America, Affiliated with American Federation of Labor; Ruth Warner et al., Defendants-Appellants.

Gen. No. 10,048.

Third District.

December 12, 1955.

Released for publication December 29, 1955.

Gene Groppi, of Westville, for appellants.

Bookwalter, Carter, Gunn & Hickman, of Danville, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, of Chicago, L. E. Birdzell, Jr., of Plainville, Connecticut, for appellee.

PRESIDING JUSTICE HIBBS delivered the opinion of the court.

The defendants bring this cause to this court by appeal from an interlocutory order denying their motion to dissolve a temporary injunction issued without notice and without bond.

The plaintiff's verified complaint filed in the Circuit Court of Vermilion County on July 11, 1955 alleged that the plaintiff, General Electric Company, a corporation, organized under the laws of the State of New York and duly qualified to do business in the State of

Illinois, was the owner and operator of a ballast manufacturing plant with factory and offices located in the City of Danville, in said County; that it was engaged in supplying ballasts for use by manufacturers of fluorescent lighting fixtures; that the first two defendants were, respectively, a local Union 997 and the International Union, United Automobile Workers of America, both of which are voluntary unincorporated associations of labor organizations who represent production employees in the plaintiff's plant; that various employees of the plaintiff, members of said local and International Union, had been continuously on strike at plaintiff's plant for approximately three weeks; that the first six named individual defendants were respectively, the president, vice-president, financial secretary, recording secretary, chairman of the bargaining committee and vice-chairman of the bargaining committee for Local 997; that the remaining defendants were regional representatives of the International Union and the regional director thereof; that the defendants and various members of said labor organization had maintained for approximately three weeks a picket line at the entrance of plaintiff's plant, composed of large numbers of members and other persons who had been engaged in picketing said plant by massing at said entrances in front thereof and on the sidewalks and streets affording entrance thereto, far in excess of the number necessary or appropriate to any lawful or legitimate purpose of picketing; that the defendants have combined and conspired with each other and with other persons not named as defendants to deprive the plaintiff of the lawful use and management of its plant by threats, suggestions of danger and physical obstruction of ingress and egress to and from said plant, and by said means and by intimidation conspired and sought to prevent other persons from working at said plant; that each working day since June 21, 1955 at

about the hours of 7:00 A. M. to 9:00 A. M., and about 3:30 P. M., when employees are scheduled to enter and leave the plaintiff's plant, the defendants had picketed the entrances to said plant for the purpose and effect of overawing, intimidating and physically obstructing those desiring to enter and leave; that said pickets massed shoulder to shoulder and on some occasions have locked hands or arms in front of such persons or vehicles, and refused, notwithstanding requests to do so, to make way for such persons or vehicles, with the effect that such persons or vehicles cannot enter the said premises without coming into bodily contact with said pickets and doing them great bodily harm; that the pickets have massed and congregated against such persons and vehicles and by threats, expressed in words and numbers and demeanor and by violence have intimidated and coerced and are continuing to intimidate and coerce such persons and drivers of such vehicles not to enter plaintiff's premises; that for the purpose of intimidating and coercing employees who desire to work at plaintiff's plant the defendants have instigated, aided and condoned the following of automobiles driven by employees desiring to work, attempting to force and forcing such automobiles off the road, and assaulting in front of his home an employee, cruising in the neighborhood of such employees, as well as making threatening telephone calls to such employees; that despite the presence and efforts of the law enforcement authorities of said City, County and State at the said plant, the defendants by massing pickets in great and uncontrolled numbers, have, now are, and unless enjoined will continue the unlawful course of conduct above set forth; that the defendants have blocked the entrance to plaintiff's parking lot and compelled all employees desiring to come to work to cross the picket line on foot; that only employees whom the Union desires to admit to said plant have crossed

157

the picket line on foot, although numerous other employees desire to enter the plant but are deterred by the intimidation, threats and violence of the defendants.

The complaint further alleged that on July 11, 1955 certain employees of the plaintiff attempted to drive into the parking lot but were prevented from doing so by the threats, violence and obstruction of the defendants, until large numbers of police officers forcibly removed the pickets and made way for approximately twenty-five cars over a period of about two hours; that the plaintiff is advised by the public authorities that they cannot continue to furnish the large number of police officers necessary to maintain ingress and egress at plaintiff's plant, and in any case that the operation of the plaintiff's said plant requires that a very large number of vehicles enter and leave daily, and it is not physically practicable to operate said plant if each vehicle or truck entering requires a heavy police escort; that because of the acts hereinabove alleged the plaintiff is suffering immediate, grievous and irreparable harm for which its damages are very large but incapable of ascertainment at law; that the plaintiff is without remedy in the premises except in a court of equity and unless the said defendants are enjoined the said unlawful acts will be continued by defendants and plaintiff will continue to suffer great and irreparable harm, injury and loss and damage to its said property.

The complaint prayed that a temporary injunction immediately issue restraining and enjoining the defendants and all of their members, agents, employees, officials and representatives, aiders and abettors and all those acting in consort with them, from engaging in mass picketing of plaintiff's plant at Danville or having at, or in the vicinity of said plant, pickets in excess of the total number of ten, or having at or near any single entrance to said plant, pickets in excess of

158

the total number of five; from physically obstructing, entering to and departure from plaintiff's said plant, all persons and vehicles; from menacing, intimidating, threatening, harassing, assaulting or using vile or abusive language against any persons leaving or entering the plaintiff's plant; from threatening, coercing, by intimidating or assaulting, employees of the plaintiff while on their way to or from the plaintiff's said plant; and from advising or encouraging or assisting or participating in the doing of any of the things which are hereby forbidden.

The complaint further prayed for other relief, that said temporary injunction be issued without notice and without bond, and that upon a hearing said injunction be made permanent.

This complaint was supported by an affidavit of the general manager of the ballast department of the General Electric Company, which alleged that for approximately three weeks before July 11th certain employees of the Danville plant of plaintiff, represented by the defendants in said suit, have engaged in mass picketing and intimidation, coercion and prevention by force, threats of force and violence of ingress and egress to and from said plant, as set forth in the complaint; it further alleged that on July 11th it became and was necessary that the law enforcement officials of the City of Danville, County of Vermilion and State of Illinois be called by plaintiff to attempt to halt the said unlawful acts described in the complaint; that on said date between the hours of 6:55 A. M. and 9:00 A. M., at and near the entrances to plaintiff's Danville plant, there occurred the mass picketing by said defendants, their obstruction of vehicles and the free entry to and from said plaintiff's said plant, by menacing, intimidating, threatening and harassing action against persons seeking to enter said plant, as are shown by the attached photographs made on said date and at said

159

hours and which truly and correctly portray the scene and the events which took place there at that certain time and place.

Attached to said affidavit and part of the record herein are fifteen photographs showing the mass picketing, the obstruction by the strikers to the entrance of automobiles, and threatening gestures by strikers toward people or occupants of the automobiles and police officers attempting to make way for the automobiles to enter the plant.

On July 11, 1955 the complaint, the affidavit and the photographs were presented to the Circuit Judge of Vermilion County. At the conclusion of the hearing the court said: "I have a distinct aversion to issuing an injunction without notice . . . I'll give you an early hearing on the injunction but I don't feel like granting it without notice and without bond." Again the court said: "Very well, let the docket show: 'Motion for temporary injunction without notice and without bond is denied. Application for temporary injunction set for Wednesday, July 13, 1955 at 9:00 A. M. Verbal notice to be given this evening, written notice by 9:00 o'clock tomorrow morning.' Can you do that?" Later the court said with reference to the docket entry: "Add the words, 'without prejudice to its re-presentation and renewal, if necessary.' "

It appears from the proceeding had on July 18, 1955, upon a motion to dissolve the temporary injunction in said cause, and from affidavits of Frank E. Green and Robert Z. Hickman, the latter being one of the attorneys for plaintiff, filed on that date nunc pro tunc as of July 12, 1955, that in the afternoon of July 11, 1955 at about 4:00 P. M., the sheriff advised the plant superintendent of the plaintiff whose employees were about to leave at 4:30 P. M. that afternoon not to attempt to leave because of the danger and menacing character of the crowd in front of the building; that they should

wait until he could get sufficient force to take them out; that at about 7:10 P. M. two state troopers came and told the employees to form their cars in line and to follow out the state police car; that at about 7:15 P. M. the twenty-five cars which had entered the plant in the morning formed a line and followed the state patrol car to the east entrance of the main parking lot; that a state police detail on foot had opened a corridor through the mob at the east entrance; that the state police car went through the corridor and turned left; that as the first car containing General Electric employees entered the corridor opened by the police, the crowd, estimated at approximately a hundred and fifty persons, immediately closed around the entrance, then slid out and out-flanked the police car and began damaging cars farther back in the line; that pickets kicked the sides of cars, pummelled them with their fists and began slamming folding chairs against the front, side and back windows, breaking them, and hitting the hood and back of cars with chairs, ripping off radio antennas and side-view mirrors; that the pickets were violent and menacing, and as the last few cars left, the pickets began to throw rocks; that at about the same time the state police fired one or two tear gas shells scattering the crowd; that Hickman received a telephone call at his home about 10:00 P. M. from the State's attorney stating he was at the jail in conference with the sheriff, the captain of the state police and Mr. Gene A. Groppi, an attorney who represented the defendants, and that the law enforcement officers were of the opinion that uncontrolled and explosive violence might ensue from the situation then existing, and that a general breakdown of law and order was threatened. Hickman over the telephone consulted the Circuit Judge who had heard the application for temporary injunction, reported the situation to him and asked him to verify the report by talking by telephone to the

persons named above at the Vermilion County jail. The trial judge then talked to Mr. Groppi over the telephone and asked him, "Mr. Groppi, do you think this situation is dangerous?" The judge said at the hearing on the motion to dissolve the injunction with reference to Groppi's answer: "And it rings in my ears yet the answer that he gave me, in all sincerity and as an upstanding and honorable lawyer would represent matters to a court. At that moment I made up my mind that in the matter of public interest it was my duty irrespective of anything else to grant this injunction. I then called Mr. Hickman and told him to bring the injunction down and that I would grant the injunction without notice and without bond, at the same time asking Mr. Hickman to prepare the affidavits reflecting for the record the matters that had been reported here by him to me and reflecting the situation. I do not think I had any other alternative than to grant this injunction."

The order for the temporary restraining order entered on July 12, 1955 enjoined the defendants: (a) From engaging in mass picketing of the plaintiff's said plant at Danville, or having at or in the vicinity of said plant pickets in excess of the total number of ten or having at or near any single entrance to the said plant pickets in excess of the total number of five; (b) From physically obstructing entry to or departure from the plaintiff's said plant of persons or vehicles; (c) From menacing, intimidating, threatening, harassing, assaulting or using vile or abusive language against any person entering or leaving the plaintiff's plant; (d) From threatening, coercing, following, intimidating or assaulting employees of the plaintiff while on their way to and from the plaintiff's said plant, or at any other time; (e) From advising or encouraging or assisting or participating in the doing of any of the things which are herein forbidden.

162

The defendants' motion to dissolve the temporary injunction was based upon the ground that it was improperly issued without notice to defendants of the application therefor, contrary to the provisions of Sec. 3 of Chap. 69, Ill. Rev. Stat. 1955 [Jones Ill. Stats. Ann. 109.351].

■ It is contended by the defendants that the trial court improperly on July 18, 1955 at the hearing to dissolve the temporary injunction permitted the affidavits of Green and Hickman to be filed nunc pro tunc as of July 12, 1955, and that the validity of the order granting the temporary injunction is to be determined as of the state of the pleadings at the time the injunction order was entered. We do not find it necessary to pass upon whether the court should have allowed the affidavits to be filed nunc pro tunc. We believe that the verified complaint and supporting affidavit and photographic exhibits referred to in such affidavit presented with the complaint justified the trial court in issuing the temporary restraining order on July 12th without notice and without bond.

■ Sec. 3 of Chap. 69 of Ill. Rev. Stat. 1955 provides: "No court or judge shall grant an injunction without previous notice of the time and place of the application having been given to the defendants to be affected thereby, or such of them as can conveniently be served, unless it appears, from the complaint or affidavit accompanying the same, that the rights of the plaintiff will be unduly prejudiced if the injunction is not issued immediately or without notice." The courts have repeatedly held that mass picketing and violence, obstruction of ingress and egress, threats, intimidation and coercion have been held to be restrainable without question. (Ossey v. Retail Clerks' Union, 326 Ill. 405; Fenske Bros. Inc. v. Upholsterers International Union of North America, 358 Ill. 239; Meadowmoor Dairies v. Milk Wagon Drivers' Union, 371 Ill.

377; Ellingsen v. Milk Wagon Drivers' Union Local No. 753, 377 Ill. 76; Rosen v. United Shoe & Leather Workers Union Local 48, 287 Ill. App. 49; Precision Scientific Co. v. International Union of Mine, Mill & Smelter Workers, 2 Ill.App.2d 531; American Zinc Co. of Illinois v. Vecera, 338 Ill. App. 523.)

In Ossey v. Retail Clerks' Union, supra, at page 417, it is said: "The complainants' business is a property right, and free access to their places of business by the complainants, their employees and customers is an incident to that right." (Citations.) "The appellants' intention to inflict loss upon the complainants and the consequent serious loss are clear. To accomplish their purposes the appellants resorted to obstruction, intimidation and violence. Even if the validity of the act invoked by the appellants be assumed, a question not now decided, it afforded them no immunity for their acts."

It is asserted by the plaintiff and not denied by the defendants on this record that the picketing of the plaintiff's plant was an unlawful act or acts.

The principal contention made by the appellants is that the complaint and the affidavit attached thereto did not warrant the conclusion that the rights of plaintiff would have been unduly prejudiced if notice of the application for injunction had been given the defendants. In passing on this question we must consider the verified complaint, the affidavit and also the photographic exhibits taken on July 11, 1955 attached to the affidavit.

In Terminal Railroad Ass'n of St. Louis v. International Ass'n of Machinists, 333 Ill. App. 288, a temporary restraining order was issued without notice, restraining the defendants from trespassing or congregating on the tracks of the plaintiff and prohibiting them from interfering in any way with the transporting of railway cars to and from the Granite City Steel

Company. The court denied a motion to dissolve the injunction. The defendants contended in that case that there was no justification for the issuance of the injunction writ without notice in the face of Sec. 3, Chap. 69, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 109.351], which prohibits the issuance of an injunction without notice, unless it appears that the rights of the plaintiff will be unduly prejudiced, if such injunction is not issued immediately and without notice, and the court say at page 292: "As to whether an injunction shall issue without notice in any case depends upon the particular facts in any such case, and is within the sound discretion of the Chancellor, which discretion courts of review will not interfere with unless the record shows an abuse of such discretion." (Citations.)

Irreparable injury is a phrase often used as meaning "undue prejudice" and has been defined by Wood on Nuisances as follows: "By irreparable injury is not meant such injury as is beyond the possibility of repair, or beyond possible compensation in damages, nor necessarily great injury, or great damage; but that species of injury, whether great or small, that ought not to be submitted to on the one hand, or afflicted on the other, and which, because it is so large on the one hand, or so small on the other, is of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law."

Again in Espenscheid v. Bauer, 235 Ill. 172 at page 176 it is said: " 'Irreparable injury, as used in the law of injunctions, does not necessarily mean that the injury is beyond the possibility of compensation in damages nor that it must be very great; and the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages, only, often furnishes the very best reason why a court of equity should interfere in a case where the nuisance is a continuous one.' "

165

The appellee was the operator of a ballast manufacturing plant with factory and offices connected therewith in the City of Danville. Its products were sold to certain continuing customers. Its factory constitutes a property right and the free access to such factory by the plaintiff and its employees is an incident of that right. The defendants to accomplish their purpose in the strike resorted to unlawful obstruction, mass picketing, intimidation and with some evidence of violence, which conduct had continued for substantially three weeks, until at the time of the issuance of the injunction, mobs of people were gathered at the entrance to the parking lot of the plant and obstructing the free passage of employees to and from the factory. The photographic exhibits hereinbefore referred to show not only obstruction of vehicular traffic intending to enter the plant, but also intimidation and threatening gestures to the employees occupying the automobiles. Even the city and state police were unable to furnish free access and egress to and from the parking lots. Employees were prevented from entering their place of occupation and thereby the production of the plant was unlawfully diminished. Because the precise detailed consequences of the invasion of the rights of the plaintiff, appellee here, cannot be predicted or measured is precisely why equity intervenes in such instance. The conduct of the defendants and their associates in their unlawful mass picketing and obstruction at the entrances to appellee's plant and preventing employees of the plaintiff from entering the plant and premises of the appellee constituted irreparable damage and unduly prejudiced the appellee in this case.

The above views of the court are based on the state of the record as of July 11th and 12th, 1955, and we find no reason to pass upon the alleged error of the trial court on July 18, 1955 in permitting the filing of the Green and Hickman affidavits nunc pro tunc as of July 12th.

166

■ Appellants further contend that the court erred in issuing the temporary writ without bond and call our attention to Sec. 9 of Chap. 69 of the Ill. Rev. Stat. 1955 [Jones Ill. Stats. Ann. 109.357], which is as follows: "In all other cases, before an injunction may issue, the plaintiff shall give bond in such penalty, upon such condition and with such security as may be required by the court or judge: Provided, bond need not be required when, for good cause shown, the court or judge is of opinion that the injunction ought to be granted without bond." Appellants' motion to dissolve was based on lack of notice and did not assign as a ground the waiver of the bond. In this state of the record the issue as to the waiver of the bond by the trial court is not before this court for review.

■ Furthermore the purpose of the bond is to secure defendants for damages which may be assessed in the event the injunction is unlawfully issued. A defendant shall not be deprived of this security except where a showing is made that complainant is unable to give bond or that he is capable of responding in damages or that no injury can result if the bond is excused. In this case the injunction order did not restrain the defendants from doing anything that they had a lawful right to do. They were not restrained from peaceful picketing. As a matter of fact the order permits them to have ten pickets about the plant of the appellee and not more than five pickets at each entrance to the parking lot. It is therefore evident that no injury could come to any of the defendants through the injunction issued here, and consequently there was no abuse by the court below in issuing the injunction without bond.

The interlocutory order entered herein by the trial court for a temporary injunction is affirmed.

Order affirmed.