JAY KAPLAN *et al.*, Plaintiffs-Appellees, *v.* LAURENCE S. KAPLAN *et al.*, Defendants-Appellants.—(STEVEN M. KAPLAN *et al.*, Defendants.)

First District (5th Division)    Nos. 80-1398, 80-2453, 80-2454 cons.

Opinion filed June 26, 1981.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen and Aaron M. Spiezer, of counsel), for appellant Laurence Kaplan.

Rosenthal & Schanfield, of Chicago (Leonard Schanfield, Robert R. Tepper, and Rochelle S. Dym, of counsel), for appellant M. S. Kaplan Company.

Reuben & Proctor, of Chicago (Don H. Reuben, Thomas F. Ging, and Jay R. Ranke, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendants, Laurence S. Kaplan and M. S. Kaplan Company appeal from preliminary and permanent mandatory injunctions entered by the trial court enforcing an "Employment Agreement" between Jay Kaplan (plaintiff) and M. S. Kaplan Company (Company). By order of October 20, 1980, we consolidated the appeals.

The issues presented for review are (1) the propriety of the preliminary injunction; (2) the propriety of the permanent injunction; and (3) whether the trial court improperly deprived Laurence of a jury trial. We reverse and remand. The pertinent facts follow.

The Company is a close corporation owned by members of the Kaplan family. Plaintiff Jay owns 26.45%, his brother, Robert, owns

29.52% and his sister, Helen Feldman, owns 29.52% of the Company's stock. The remaining stock is owned by Jay's son, Samuel, and his nephews, including Laurence.

In 1969, Benjamin Kaplan, one of Jay's brothers, died. At the time of his death he owned 51% of the Company's stock. Pursuant to a "Stock Alienation Agreement," Benjamin's widow was to sell this stock to the Company based on book value. A lawsuit ensued over the price at which the corporation's shares were to be purchased. (See *Estate of Kaplan* (1979), 67 Ill. App. 3d 818, 384 N.E.2d 874.) While this litigation was pending, the Company amended its stock alienation agreement, and it was approved and signed by all shareholders.

Laurence testified that in the spring of 1977, Jay was in charge of the Company's metal plant and his son, Samuel, was his assistant. The plant was losing money and Laurence asked Samuel for his recommendations. Samuel suggested that he would like to manage the Company. Laurence indicated that he would take the matter up with the board.

Laurence stated that he received a call shortly thereafter from Aubrey, another son of Jay, who requested that his father not be cut off from the payroll. Laurence stated to Aubrey that the Company did not have a policy of making gratuitous payments to retired shareholders because this would be unfair to the other shareholders. Aubrey then questioned a particular accounting practice of the Company and the fact that the Company was spending money on a subsidiary that was losing money. Laurence stated that in reorganizing the subsidiary, it was suggested that Jay be given a contract for $25,000 a year. He further indicated that he would talk it over with the board of directors.

After a subsequent meeting with Aubrey and Steven, Laurence indicted he would recommend that Jay no longer be general manager of the metal's plant but nonetheless be given a contract with a salary of $25,000 a year. Jay was paid under this contract for about three years.

In 1979, Jay filed a petition to perpetuate his testimony stating that he believed that his consent to the 1972 amendment to the stock alienation agreement may have been induced by Laurence's fraud. To this, the Company filed a declaratory judgment asking the court to declare that the 1972 amendment to the shareholders agreement was in full force and effect.

Laurence testified that Aubrey declared at a meeting with him that if the Company insisted on the declaratory judgment suit, he and his father would bring a derivative action against him and Steven. Laurence further testified that Aubrey indicated the real reason for his meeting was that his father wanted to sell his stock to the Company for about $5 million while he was still alive, rather than at his death per the stock alienation agreement, at book value. Laurence pointed out that he could not propose

such to the Company and the agreement under which Jay was given an employment contract in return for not bringing lawsuits was breached by Jay's perpetuation of testimony.

Subsequently, Jay's shareholders' derivative suit was filed seeking an accounting and unspecified sums from the Company. The Company ceased making payments to Jay under his employment agreement in April 1980. In response, he filed a motion for injunctive relief in the derivative suit alleging he had an employment agreement with the Company that provided $25,000 per year for life for making himself available for consulting services.

Jay presented his motion to the court on May 12, 1980 and although defense counsel requested a delay in order to file a response, the court ordered payments continued until the evidentiary hearing on June 13, 1980.

Subsequent to the preliminary injunction, Laurence and the Company appealed the injunction and filed a motion to strike and dismiss Jay's motion for a permanent injunction which was denied.

At the permanent injunction hearing, Jay testified that he had been in the hospital for approximately two months and now requires a full-time practical nurse. He admitted through counsel that no services had been performed under the contract and further that the Company never expected or would request any services.

Jay's son, Sam, testified as to Jay's financial condition estimating his income from stock at $3,000 a year, dividends from the Company with the most recent amount being approximately $36,000 paid on April 7, 1980, social security payments and bank accounts amounts of $120,000 to $150,000. He pointed out that of these amounts $120,000 represented the principal and interest due on money loaned to Jay by him, as his father was concerned that he would not be able to pay his bills.

Laurence testified as to the promise made by Aubrey in return for Jay's employment agreement as well as to his subsequent meeting with Aubrey, who wanted the Company to buy Jay's stock at $5 million instead of $4 million. He indicated that it was a unanimous board decision to terminate Jay's contract.

The trial court made the following findings:

"1. That the Contract between the parties was clear and unambiguous, and was in reality a retirement contract for Jay Kaplan for the remainder of his life;

2. That Jay Kaplan is concerned that he will not have sufficient monies with which to live out his age and life in the manner to which he is accustomed;

3. That the disturbance of the status quo of Jay Kaplan's salary

and the other provisions of the Contract, (Plaintiff's Exhibit No. 1), dated March 10, 1977, is improper, illegal and unfounded;

4. That the action of April 22, 1980 of, not only Laurence S. Kaplan and Steven M. Kaplan, but through them, and the Board of Directors of M. S. Kaplan Company, was conceived in the hope and expectation that by so doing, (especially with the loss of his salary), that Jay Kaplan would not proceed with, and possibly discontinue, the pending action itself;

5. That M. S. Kaplan Company has no pension for its employees;

6. That the parties did not contemplate Jay Kaplan performing any valuable service for M. S. Kaplan Company; and, that the performance of a service was not a condition precedent or in any way to effect the payments therein provided;

7. That the extremely greater weight of evidence on the issues herein are in favor of the plaintiff, Jay Kaplan; and against Laurence S. Kaplan, Steven M. Kaplan and M. S. Kaplan Company, the defendants herein."

The court then entered an order permanently enjoining the Company, Laurence, Steven and others in active association with them from taking any action detrimentally affecting Jay's employment relationship. This appeal followed.

OPINION

■■■ Defendants initially argue that the allegations of Jay's motion do not properly state a claim for preliminary injunctive relief. Since the amendment to the Injunction Act in 1967, only two types of injunctive relief may be entered prior to the resolution of the controversy on its merits; such injunctions are a temporary restraining order (Ill. Rev. Stat. 1979, ch. 69, par. 3—1), and a preliminary injunction (Ill. Rev. Stat. 1979, ch. 69, par. 3). (See also *Paddington Corp. v. Foremost Sales Promotions, Inc.* (1973), 13 Ill. App. 3d 170, 300 N.E.2d 484.) In this instance, while the injunctive relief granted has been labeled a preliminary injunction, it is more in the nature of a temporary restraining order, as we should look to substance rather than form. (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1.) The practical effect, however, of a temporary restraining order issued with notice is the same as a preliminary injunction issued with notice. A temporary restraining order issued with notice and a preliminary injunction issued with notice, neither of limited duration, are the same type of relief and both require the showing of the likelihood of ultimate success on the merits. The statutorily imposed 10-day duration on temporary restraining orders is not needed where there has been notice to opposing parties. (*Kable Printing Co. v. Mount Morris Bookbinder Union Local No. 65-B* (1976), 63 Ill. 2d 514, 524, 349 N.E.2d 36.) The

temporary restraining order and the preliminary injunction both serve the purpose of maintaining the status quo until the trial court can consider the case on the merits. See *S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73; *Board of Education v. Springfield Education Association* (1977), 47 Ill. App. 3d 193, 361 N.E.2d 697.

■■ In the pending matter, the injunctive relief was issued before counsel for Laurence and the Company responded to the motion. Therefore, our review of the trial court's issuance of the relief granted here rests solely on the sufficiency of the motion. On appeal, we review whether there is a sufficient showing to sustain the trial court's order granting or denying the relief sought. *Stocker Hinge Mfg. Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 377 N.E.2d 1125; *Schwalm Electronics, Inc. v. Electrical Products Corp.* (1973), 14 Ill. App. 3d 348, 302 N.E.2d 394; *Brooks v. La Salle National Bank* (1973), 11 Ill. App. 3d 791, 298 N.E.2d 262.

Jay alleged that he had been employed pursuant to an employment agreement with M. S. Kaplan Company which provided that he would receive $25,000 per annum for life, in consideration for him making himself available as a consultant. Payments were made in appropriate installments on the first day of each month. He indicated that he did not receive the May 1, 1980 payment and upon inquiry was told that no further payments would be made under the employment agreement. Further, he stated that he is 88 years old, in poor health, that payments under this agreement constitute his only substantial source of income other than potential dividends, and that suspension of payments will cause immediate and irreparable harm to his financial, emotional and perhaps physical conditions.

The trial judge determined from this pleading that the status quo (see *Summit Electric Co. v. Mayrent* (1974), 17 Ill. App. 3d 545, 308 N.E.2d 313) could be maintained by a continuation of the usual monthly payment to Jay until a further hearing could be held.

■■ A plaintiff in his request for temporary relief must raise fair question as to the existence of the right claimed, lead the court to believe that he will probably be entitled to the relief prayed for if the proof should sustain his allegations and make it appear advisable that the positions of the parties should stay as they are until the court has the opportunity to consider the case on the merits. (*Toushin v. city of Chicago* (1974), 23 Ill. App. 3d 797, 320 N.E.2d 202.) An applicant is not entitled to a temporary injunction as a matter of right; he must show (1) it is clear that he has a lawful right for which he seeks protection, (2) he will be irreparably harmed, and (3) his remedies at law are inadequate. (*G. H. Sternberg & Co. v. Cellini* (1973), 16 Ill. App. 3d 1, 305 N.E.2d 317, *appeal after remand* (1975), 30 Ill. App. 3d 874, 333 N.E.2d 261.) It is a well-settled principle that a party cannot seek equitable relief when he has an

adequate legal remedy. Where the mere payment of money would provide sufficient relief, a request for specific performance will be denied since the legal remedy is adequate for this. *Stevens v. Protectoseal Co.* (1975), 27 Ill. App. 3d 724, 327 N.E.2d 427.

■■ In the present case, the motion submitted by plaintiff indicates that he only sought monies allegedly due and owing him from defendants pursuant to the employment agreement. Where complete relief may be afforded plaintiff upon a final hearing, he is not entitled to a temporary injunction which is mandatory in nature. (*Moehling v. N. & J. Enterprises, Ltd.* (1973), 15 Ill. App. 3d 987, 305 N.E.2d 183.) We believe that plaintiff did not make a sufficient showing to entitle him to temporary injunctive relief.

We now consider the propriety of the issuance of the permanent injunction. At the hearing on the merits, the trial court is required to weigh the evidence to determine if plaintiff has sustained his burden of proving a *clear right* to injunctive relief. A permanent injunction is designed to extend or maintain the status quo indefinitely after a hearing on the merits where it has been shown that plaintiff is suffering irreparable harm and there is no adequate remedy at law. *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 413 N.E.2d 1299.

■■ In the pending matter, the trial court made several findings, one of which is "that the contract between the parties was clear and unambiguous, and was in reality a retirement contract for Jay Kaplan for the remainder of his life." It appears that the court stated that this contract on its face was an employment contract, yet it admitted parol evidence which varied its terms. An examination of the contract document on its face indicates that this is not a retirement contract, but an employment contract, and unless its terms were ambiguous, parol evidence should not have been admitted to vary or modify its terms. *Kendall v. Kendall* (1977), 46 Ill. App. 3d 559, 360 N.E.2d 1242. See also *Reimer v. Leshtz* (1980), 90 Ill. App. 3d 980, 414 N.E.2d 114.

■■ The injury Jay complains of, which is a breach of the employment contract, is capable of being measured and corrected by an award of money damages alone. In a suit for mandatory injunctive relief founded on breach of contract, in which there was no evidence that defendant was insolvent so that plaintiff could not collect a money judgment from defendant for such breach, plaintiff is not entitled to injunctive relief. *Rao Electrical Equipment Co. v. MacDonald Engineering Co.* (1970), 124 Ill. App. 2d 158, 260 N.E.2d 294. See also *Stevens v. Protectoseal.*

■■ In regard to the court's other findings that: (1) Jay is concerned that he will not have enough money to live out his life, the evidence discloses that he has approximately $120,000 to $150,000 in bank accounts, plus additional sources of income, and further that there has been no demand

for repayment of the loan he secured from Samuel; (2) the possibility of the derivative action being discontinued, and (3) the finding that the performance of services was not contemplated in the contract is not sufficiently supported by the evidence or the document itself. In order to obtain equitable relief, one must be able to show an actual, substantial injury which is not speculative or contingent upon uncertainties. (*Morrissey v. Eli Lilly & Co.* (1979), 76 Ill. App. 3d 753, 394 N.E.2d 1369.) We do not believe the evidence at the hearing proves the allegations of Jay's motions sufficiently to warrant permanent injunctive relief.

Nor do we find that the evidence in this case is analagous to the circumstances that exist in the "retaliatory" action cases. In *Clore v. Fredman* (1974), 59 Ill. 2d 20, 319 N.E.2d 18, a statute prohibited a landlord from terminating or refusing to renew a lease because a tenant complained to a governmental entity of some code or regulation violation. The landlord's retaliatory eviction of a tenant for instigating building code violation proceedings was thus enjoined. Likewise, in *Hendley v. Central of Georgia R.R. Co.* (5th Cir. 1980), 609 F.2d 1146, an employee's actions were under the purview of the Federal Employer's Liability Act making it a crime to discipline an employee for voluntarily furnishing information in a FELA action. In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, an employee exercised her rights under the Workmen's Compensation Act and her retaliatory firing entitled her to punitive damages. In *Branti v. Finkel* (1980), 445 U.S. 507, 63 L. Ed. 2d 574, 100 S. Ct. 1287, there were first and fourteenth amendment constitutional violations for discharging employees because of their political beliefs. And public policy considerations made the tort of retaliatory discharge available to an at-will employee who was fired for reporting a possible criminal offense and cooperating with law enforcement authorities. (*Palmateer v. Intl. Harvester Co.* (1981), 85 Ill. 2d 124.) The present case is distinguishable since Jay does not allege a statutory violation as in *Clore, Hendley* and *Kelsay* or a constitutional violation, as in *Branti*, for our consideration. And further, there was no request for injunctive relief in *Palmateer* and no indication that the court's holding would be applicable to the circumstances in our case.

Our supreme court observed in *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549, 370 N.E.2d 223, 227, that:

> "For there to be an adequate remedy at law which will deprive equity of its power to grant injunctive relief, the remedy 'must be clear, complete and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy.' (*K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021.)"

In this instance, we believe Jay's remedy at law meets this criteria.

■■ Lastly, Laurence contends that he was improperly denied his constitutional right to a jury trial. The trial court determined that it had equity jurisdiction of the matter before it (see *Stevens v. Protectoseal*), and further that the constitutional guarantee of a jury trial is not a matter of right in equity proceedings. (*Cooper v. Williams* (1978), 60 Ill. App. 3d 634, 376 N.E.2d 1104.) As such, the trial court could properly exercise its discretion in denying a jury trial of an equitable issue. (Ill. Rev. Stat. 1979, ch. 110, par. 63.) We have, however, concluded that the matter before us involves a cognizable legal claim and, thus, Laurence can now assert his demand for a jury trial. Ill. Rev. Stat. 1979, ch. 110, par. 64.

In summary, we hold that the court improperly entered the orders for injunctive relief and the action should have been an independent suit at law. We urge, however, that in light of Jay's age and the narrow issues between the parties, the action on remand should be litigated expeditiously.

For the foregoing reasons, we reverse the orders of the court granting injunctive relief and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded with directions.

LORENZ and MEJDA, JJ., concur.