*In re* MARRIAGE OF TOBY S. SHERWIN, Petitioner and Counterrespondent-Appellee, and THEODORE R. SHERWIN, Respondent and Counterpetitioner-Appellant.

First District (5th Division)   No. 83—1991

Opinion filed March 30, 1984.—Rehearing denied May 15, 1984.

Rinella and Rinella, Ltd., of Chicago (Theodore R. Sherwin, *pro se*, and David B. Carlson, of counsel), for appellant.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Jerome Berkson and Howard A. London, of counsel), for appellee.

JUSTICE WILSON delivered the opinion of the court:

This is an appeal from an interlocutory order denying respondent's petition for a preliminary mandatory injunction directing petitioner to return light fixtures and certain items of furniture she had removed from the marital domicile a few days prior to filing a petition for dissolution of marriage. The issues presented for review are: (1) whether a sufficient evidentiary hearing was held on respondent's petition; and (2) whether it was an abuse of discretion for the trial court to deny the issuance of a preliminary mandatory injunction. For the reasons that follow, we affirm the judgment of the trial court.

On May 10, 1983, upon returning home from work, respondent discovered that petitioner had removed from the marital domicile substantially all of the household furniture, decorative objects of art, paintings, crystal, sterling silver place settings, area rugs, bathroom and kitchen linens, pots, pans, food, liquor, cleaning materials, lamps, light fixtures (including track lighting), shelving, shower curtain and various sundries. Photographs of the apartment taken subsequent to May 10, 1983, indicate that respondent was left with a straight-back chair, an end table, three folding chairs, a portable television with stand, an armoire, a breakfront, a bed, piano with bench, a desk, wall unit bookshelves with drawers, a floor lamp, a table lamp, overhead kitchen lighting, a kitchen table with four chairs, kitchen appliances, all window blinds and miscellaneous paintings and art objects.

In his response and counterclaim to the petition for dissolution of marriage filed on May 18, 1983, respondent prayed for a preliminary mandatory injunction directing petitioner to return all of the items removed from the apartment on May 10. In support of his request for injunctive relief, respondent alleged, *inter alia*, that: (1) petitioner's

wrongful removal of furnishings and other property from the marital domicile "rendered the apartment practically uninhabitable except as a place to sleep and bathe," and unsuitable for entertaining; (2) the oil paintings and bronzes which were wrongfully removed are unique and irreplaceable and cannot be compensated for by money damages; and (3) the furniture, hall lighting, track lighting, dining room fixture and three area rugs "were all specially designed and created for use at [the] apartment."

On May 25, 1983, in response to respondent's emergency motion, the trial court entered a temporary restraining order (TRO) "restraining and enjoining [petitioner] from in any manner, directly or indirectly transferring, selling, encumbering, concealing or otherwise disposing of any of the property removed by her," and scheduled the hearing on respondent's petition for preliminary injunctive relief for June 3, 1983. Following several continuances and extensions of the TRO, a hearing was held on respondent's petition on July 7, 1983, after which the court ruled that it had jurisdiction to enter a preliminary mandatory injunction if the facts warranted, and extended the TRO, pending further order of the court or final resolution of the case. In light of its jurisdictional ruling, the court allowed the parties an opportunity to continue out-of-court discussions regarding interim possession of the disputed property before proceeding on the request for a mandatory injunction. The parties agreed to further discussions and the hearing was thus continued to July 13, 1983. On that date, respondent indicated to the court that the parties had agreed to exchange certain decorative items; however, the return of household furniture and lighting remained in dispute. In response, petitioner argued that the court was without jurisdiction to determine possession of the remaining items because those items were either acquired after marriage or were subject to claims of gift or inheritance. Thus, a determination should be reserved for the final resolution of distribution of the marital property. The trial court replied:

> "Well, I am not going to get into the issue of whose property is whose. But it seems to me that anything that was affixed, and that is track lighting and things of that kind, ought to be put back. And *** the furnishings ought to be divided in such a way as both of them can live in a reasonable amount of comfort. And put an end to this."

In arguing against return of any items, petitioner stated that the agreement reached by the parties which was presently before the court should be conclusive of interim possession; that the fixtures were purchased by petitioner during the marriage with her own

money; and that photographs taken of the apartment demonstrate that it is fully furnished. Thereafter, the trial court viewed photographs of the apartment submitted by both parties which depicted its status both before and after May 10, 1983, and was advised that petitioner had already affixed the track lighting to her new apartment. The trial court then asked respondent why he did not simply purchase some new fixtures, put them up, rent some furniture, and then request compensation upon final resolution of the case. In this regard, the court further stated:

"There are other things other than specific performance, Mr. Sherwin. And you can get compensation for expenditures that you have made. And if she has hung those fixtures someplace else and to have her tear them down and to reinstall them in the place that they were, if I do that, you understand that in the event that the Court—if the trial Court awards them to you, you are either going to have to buy them from her at the cost that she names—."

Respondent declined this suggestion and arguments continued as to who had paid for which items. When the trial court ruled that the controversy was "not a matter for the Court of law," the following colloquy ensued:

"RESPONDENT: It was last time.

COURT: And I [had] not seen the photographs of the premises. And now that I have seen it, I'm sorry that I said that.

RESPONDENT: And the photograph shows that this is pretty barren.

COURT: You will have to take this to the trial Court. *** And let the trial judge do it.

RESPONDENT: Last time you were going to do it. And you said that you would.

COURT: Now that I'm better informed, I realize what I said last time was imprudent and I changed my mind.
* * *

And having seen the photographs, the evidence, the photographic evidence of the apartment, and of the items in dispute, it is the ruling of this Court that this matter be reserved for resolution by the trial Judge."

Thereafter, following arguments on petitioner's motion for temporary maintenance, respondent requested permission to make an offer of proof as to the condition of the apartment. The trial court denied the request, but allowed the photographs of the apartment to be admitted into evidence. Respondent's timely appeal from the trial court's denial

of his petition for injunctive relief followed.

OPINION

We shall first address respondent's contention that the trial court abused its discretion in refusing to conduct an evidentiary hearing on his petition for a preliminary mandatory injunction.

After reviewing the record, we cannot see how the arguments heard on July 13, 1983, could be reasonably characterized as anything other than an evidentiary hearing on respondent's petition. Both parties argued extensively on the merits of the petition and both admitted into evidence photographs of the apartment taken before and after removal of the disputed items. Upon reviewing the photos, the trial court apparently concluded that it was not "uninhabitable" and that respondent had an adequate remedy at law. Admittedly, the trial court's statement, after viewing the photos, that a hearing would not be held suggested that the previous argument and admission of evidence were elements of some other type of proceeding. However, in our opinion, the trial court underestimated what it had theretofore accomplished. Respondent further argues that he was improperly denied the opportunity to make an offer of proof as to the contents of the apartment photographs. Yet, in his reply brief, respondent argues against the merits of his own offer of proof when he states:

"It is an old Chinese proverb that one picture is worth more than ten thousand words. This is true in the case at bar. The comparison of the photographs of the condition of the apartment before and after May 10, 1983, are vivid visual evidence of the irreparable injury occasioned by PETITIONER'S act."

We concur with respondent's analysis that the photographs are self-explanatory and, accordingly, we find that any further explanation of them would have been superfluous. Moreover, we do not find that proposed expert testimony regarding the extent of damage done to the apartment by the removal of various items was necessary to the trial court's interlocutory determination. Thus, we conclude that the arguments by both counsels and the admission into evidence of photographs depicting the condition of the apartment before and after removal of the disputed items constituted a sufficient hearing on respondent's petition for injunctive relief.

We turn next to respondent's contention that it was an abuse of discretion for the trial court to have denied the issuance of a preliminary mandatory injunction. Respondent argues that a preliminary mandatory injunction was necessary to maintain the status quo, and to discourage potential litigants from making "a wholesale removal

and looting of marital homes and apartments on the eve of litigation."

The primary purpose of a preliminary injunction is to preserve the status quo until there can be a final hearing on the merits. In this regard, the term "status quo" has been consistently defined by the courts as " 'the last actual, peaceful, non-contested status which preceded the pending controversy.' " (*Deisenroth v. Dodge* (1953), 350 Ill. App. 20, 23, 111 N.E.2d 575.) Generally, preservation is accomplished by keeping everything at rest. However, in certain circumstances, a state of rest may be fatal to the plaintiff's rights. In such cases, a mandatory injunction may be necessary. (*Brooks v. La Salle National Bank* (1973), 11 Ill. App. 3d 791, 799, 298 N.E.2d 262.) Because injunctive relief is an exceptional remedy, it is not granted as a matter of course. (*Sheridan v. Park National Bank* (1981), 97 Ill. App. 3d 589, 591, 422 N.E.2d 1130.) Instead, courts must exercise extreme caution and grant such relief only after the plaintiff has established the existence of a certain and clearly ascertainable legal right, irreparable harm and an inadequate remedy at law. (*Distaola v. Department of Registration & Education* (1979), 72 Ill. App. 3d 977, 980, 391 N.E.2d 489.) Furthermore, where complete relief may be afforded plaintiff upon a final hearing, he is not entitled to a preliminary injunction which is mandatory in nature. *Kaplan v. Kaplan* (1981), 98 Ill. App. 3d 136, 142, 423 N.E.2d 1253.

In the present case, respondent argues that a mandatory injunction is necessary to preserve the status quo, which he defines as the condition of the apartment prior to the petitioner's unilateral removal of the furnishings on May 10, 1983. We agree with respondent's argument as to that which constitutes the relevant status quo in this case. However, disruption to the status quo by itself does not mandate the issuance of injunctive relief. Plaintiff must also establish the existence of a certain and ascertainable legal right, irreparable injury and an inadequate remedy at law. (*Distaola v. Department of Registration & Education* (1979), 72 Ill. App. 3d 977, 980, 391 N.E.2d 489.) In our opinion, respondent has failed to establish any of the essential prerequisites.

First, until a final determination is made by the trial court regarding the division of the disputed personal property pursuant to the petition for dissolution of marriage, respondent can claim no clear, ascertainable legal right to the exclusive possession of that property. (See Ill. Rev. Stat., 1982 Supp., ch. 40, par. 503.) At the present time, each party has an equal possessory right (see *Clark v. Covington* (1982), 107 Ill. App. 3d 845, 847, 438 N.E.2d 628), which is not sufficient to grant a mandatory injunction.

Second, respondent's claim that he is irreparably injured by the loss of use of the furnishings is unpersuasive. Admittedly, the apartment is not now furnished in the manner to which respondent had been accustomed, but it cannot be reasonably described as "uninhabitable." The photographs indicate that respondent has a bed, bedside lamp, end table, armoire, breakfront, folding chairs, straight-back chair, television set with stand, piano with bench, desk, floor lamp, kitchen table with chairs, kitchen appliances, overhead kitchen light and all window blinds. Moreover, pursuant to court order, both parties are restrained and enjoined from in any way disposing of items removed from the apartment pending final resolution of the controversy. Thus, respondent is protected from the interim loss of any unique art objects or furnishings which petitioner has in her possession.

Third, respondent has an adequate remedy at law. As the trial court indicated, he can either rent or purchase any furnishings or lighting that he deems necessary, and then seek monetary compensation from the trial court in the final distribution of assets. Similarly, he can seek compensation for any repairs to the walls and ceilings necessitated by petitioner's removal of various paintings and lights. In regard to these alleged damages, we note that the evidence indicates that petitioner did not actually cause any additional damage to the walls and ceilings. Instead, she merely exposed those holes that were already there. Certainly, the inevitable removal of undisputed premarital paintings would have eventually exposed many of those same nail holes. With respect to the exposed electrical wires, replacement light fixtures would easily remedy the problem.

In light of the aforementioned discussion, we find that respondent's reliance on *Scholz v. Barbee* (1951), 344 Ill. App. 630, 101 N.E.2d 845, *Deisenroth v. Dodge* (1953), 350 Ill. App. 20, 111 N.E.2d 575, and *Brooks v. La Salle National Bank* (1973), 11 Ill. App. 3d 791, 298 N.E.2d 262, is misplaced. In *Scholz*, plaintiffs and defendants owned an apartment building as joint tenants. The defendants forcibly took possession of part of the premises formerly used jointly as a washroom, and a temporary mandatory injunction was issued requiring the defendants to let the plaintiffs jointly use the room. In upholding the injunction, the reviewing court emphasized that plaintiffs had no adequate remedy at law and might have suffered irreparable injury if the injunction had not issued. As discussed, these factors were not established in the present case. In *Deisenroth*, the court granted a temporary mandatory injunction directing defendants to remove a barricade erected by them across a right-of-way. In arriving at its de-

cision, the court recognized the necessity for a mandatory injunction when to do otherwise would be fatal to plaintiff's rights. In the present case, denial of a mandatory injunction would not jeopardize respondent's property rights. Finally, in *Brooks*, injunctive relief was granted where defendant-lessor exercised self-help and wrongfully took possession of personal property belonging to plaintiff-lessee. In upholding the decision, the reviewing court concluded that plaintiff had established irreparable injury and that the remedy at law was inadequate. Again, these factors were not established in the present case.

■ In addition, we find respondent's attempt to broaden the definition of "irreparable injury" by relying on *General Electric Co. v. Local 997 United Automobile Workers of America* (1955), 8 Ill. App. 2d 154, 130 N.E.2d 758, equally unpersuasive. The situation in *General Electric Co.* concerned mass picketing and improper conduct in connection with a strike which the trial court enjoined. In upholding the injunction, the appellate court quoted a definition of "irreparable injury" which moved away from the impossibility of monetary damages and focused on the frequently recurring nature of the injury which rendered it incapable of reasonable redress in a court of law. (8 Ill. App. 2d 154, 165.) We fail to see how this definition aids respondent's position, especially when the pivotal distinction between *General Electric Co.* and the present case is that in the former, the remedy at law was inadequate; in the latter, it is not.

In summary, we hold that the trial court properly denied respondent's petition for injunctive relief. In rendering this decision, we wish to emphasize that it is not to be construed as indirect approval of petitioner's self-help actions. Instead, it is rendered in recognition of the extraordinary nature of mandatory injunctive relief and its remedial, rather than punitive, function. Certainly, if the essential prerequisites had been established, the trial court could have properly granted a preliminary mandatory injunction.

For the foregoing reasons, we affirm the order of the trial court denying injunctive relief and remand the cause for further proceedings.

Affirmed.

MEJDA, P.J., and LORENZ, J., concur.